IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| SHANNON BAZEMORE,[1] | |
| Plaintiff, | CIVIL ACTION NO. |
| vs. | CV423-372 |
| | COMPLAINT |
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, ILA LOCAL 1475, | JURY TRIAL DEMAND |
| Defendant. | |

## NATURE OF THE ACTION

This is an action brought under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991, to correct the disparate and unlawful employment practices based on race, discrimination, and segregation. The purpose of this action is to provide appropriate relief to Shannon Bazemore

---

[1] For all intent and purposes, Bazemore is deemed to have timely amended the Charge of discrimination previously pending before the Equal Employment Opportunity Commission ("EEOC"). Said amendment was filed within one-year after its initial filing and sought to add/join twenty-one (21) additional African American bargaining unit members impacted by Defendant reckless indifference to a federally protected right; thus, giving rise for and moves the Court to enter a Certification Order declaring this Complaint a Class Action under Federal Rules of Civil Procedure (Rule 23). The aggrieved members will be incorporated herein by reference as ("Bazemore" or "Plaintiff(s)"), respectively.

("Bazemore") and twenty-one (21) additional African-American members, all of whom are adversely affected by the International Longshoremen's Association ("Defendant" or "ILA Local 1475") intentional/discriminatory actions of unfair employment practices. Bazemore will proceed to preponderantly prove that Defendant operates under unfair employment practices that tolerate and condone its members to discriminate against Plaintiff(s) based on race.

Defendant further engages in intentional discrimination against Bazemore and not only subjects Plaintiff(s) to a racially hostile work environment, but Defendant continues to unfairly permit groups of white members to be pre-awarded seniority classifications that precede Plaintiff(s) from categories AA through GG, when Bazemore was/is likewise entitled to AA seniority.

Defendant inequitably pegged Bazemore in seniority classification HH1 to have Plaintiff(s) sit back for years to come and watch the seniority classifications from DD through GG be filled to whatever capacity Defendant sees fit.

Defendant also went the extra mile to hinder Plaintiff(s) from advancing in its workplace, regarding seniority classifications; that is, by way of unconstitutional waivers and last-minute revisions to its Memorandum of Understanding ("MOU") to be disadvantageously applied to prevent Bazemore from obtaining her entitled to AA seniority classification.

## JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 451, 1331, 1337 1343, and 1345. This action is authorized and instituted under Section 706(f)(1) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and under Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The unfair employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Georgia, Savannah Division.

## PARTIES

3. Plaintiff, Shannon Bazemore, is a bargaining unit member ("member") who has been trained to perform various jobs as a clerks and checkers ("CNC") with the International Longshoremen's Association, Local 1475 ("ILA Local 1475"), located in Savannah, Georgia.

4. Bazemore is a bargaining unit member represented by ILA Local 1475 and dispatched for work through ILA Local 1475's hiring hall.

5. Defendant (ILA Local 1475) is an incorporated not-for-profit labor organization representing CNC and deck and dock men ("DND") in the Port of Savannah.

6. Defendant is a local union of the International Longshoremen's

3

Association that operates under the South Atlantic and Gulf Coast District of the International Longshoremen's Association (the "District").

7. At all relevant times, Defendant, ILA Local 1475, who has continuously been a labor organization that employs/represents at least 150 bargaining unit members to be dispatched to the Port Employers under the terms of a *Collective Bargaining Agreement* ("CBA") between the Georgia Stevedore Association ("GSA") who represents the Port Employers in collective bargaining and ILA Local 1475.

8. At all relevant times, Defendant has continuously been a labor union organization engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

9. More than thirty days before the institution of this lawsuit, Bazemore filed a charge with the EEOC alleging, *inter alia*, intentional discrimination, segregation, numerous acts of unlawful employment practices, and the condoning of Title VII violations blatantly committed by a group of its employed members.

10. On September 29, 2023, The EEOC issued an adverse official notice to Bazemore, thereby, terminating its investigation, dismissing Plaintiff's Charge, and notifying Bazemore of her right to file suit in a federal tribunal.

11. All conditions precedent to the institution of this lawsuit have been exhausted and fulfilled, and this case is ripe for adjudication.

## STATEMENT OF CLAIMS

12. Since at least October 1, 2020, Defendant has engaged in unlawful employment practices, at its workplace, located in Savannah, Georgia, in violation of Section 703(a) of Title VII, 42 U.S.C. §§ 2000(e)-2(a).

13. More specifically, Defendant engaged in all types of unlawful conduct and unfair employment practices: segregated work list, disadvantageously changing the rules and MOU as applied to Plaintiff(s), along with implementing unconstitutional waivers to soon be abrogated—all in the name of assuring groups of white bargaining unit members that Plaintiff(s) will not be joined in their category and take on AA seniority.

14. Defendant appears to have joined in the plot to hinder Plaintiff(s) from advancing/being awarded her rightful and just due seniority classification of "AA."

15. Defendant is an incorporated not-for-profit labor organization that employs CNC and DND men/women to help ameliorate the maritime process of moving voluminous amounts of containers to and from vessels when docked at the Port of Savannah.

16. Bazemore is an African American minority female.

17. On or about September 2020, Bazemore was hired on by Defendant and ultimately trained to perform various job functions as a CNC.

18. Before medical/health benefits, pension plans, or seniority statuses can be acquired, a member must accumulate and maintain at least 700 work hours during a specific calendar year, which commences on October 1st of every respective year and ends on September 30th of the following year.

19. During the contract year in question (October 1, 2020 through September 30, 2021), Bazemore, like many other members obtained at least 700 work hours, at which time, Plaintiff's seniority classification of ("zzz") stemmed from a segregated "emergency street list" or "extra list."[2]

20. After communications commenced to circulate in the workplace, that: "[a]lthough, Plaintiff(s) performed the same job functions, worked through the pandemic, and accumulated 700 work hours during the contract year 2020-2021, received medical benefits/earnings went towards a pension plan--you all will not be obtaining "AA" seniority due to, *inter alia*, you all were hired from a (segregated) emergency street list/extra list."

---

[2] Initially, Bazemore's seniority classification as a "casual"/entry-level worker, began with zzz. After accumulating at least 700 hours during the contract year in question, Plaintiff's classification was changed to Z5. The Z5 classification was ultimately changed to Z0. Although Bazemore's claims rest upon the fact that she was/is entitled to "AA" seniority classification, Defendant has inconceivably shoved Plaintiff(s) at the back of the bus, if you will, to take on HH1 seniority classification.

6

21. To such, and in an attempt to correct the plethora of obvious wrongs being blatantly committed by the Defendant, Bazemore launched a sensitive racial discrimination grievance—highlighting all egregiousness and emailed it to Defendant (Steve Sims, President of ILA Local 1475), and many other prominent officials (e.g., Vincent Cameron, South Atlantic Gulf Coast District; Derek Miles, President, Georgia Stevedore Association to name a few).

22. The aforementioned grievance resulted in Bazemore and another African American female member (Nedra Cook), having a video telephonic conference, on or about March 3, 2022, held before an attorney for the International Longshoremen's Association (name unknown); Benny Holland, Executive Vice President Emeritus and Bill Williams just to name a few.

23. Bazemore's husband (Levon) was also present and allowed to speak on Bazemore's and Cook's behalf during said conference call.

24. Sometime after the teleconference, it was continually communicated throughout Defendant's workplace, that although Bazemore, Cook, and all other former zzz's accumulated at least 700 work hours during contract years of 2020-2021, worked laboriously through the pandemic, etc., "they will not be awarded AA seniority . . ., but you all" (Bazemore, Cook and all other former zzz's) will be awarded sometime in the near future with HH seniority for the hard work and record-breaking numbers accomplished during pandemic."

25. Within the above-mentioned grievance, which was emailed to Defendant, its superiors, and/or counterparts, Bazemore attached as an exhibit, a group text sent out by one white bargaining unit member (Jimmy Gunby) to a group of other white bargaining unit members.

26. In what appears to be a clandestine conspiracy to hinder Bazemore and 21 other African American members from advancing to "AA" seniority classification along with this group of predominantly white members, Mr. Gunby goes on to exclaim in relevant part:

> "[H]ello everyone this is Jimmy Gunby, This text is for information only please don't respond to this group text. List 5 will not go into effect until October 1st, which means all the zzz's that make their hours will be in our category ... The total for our category is sitting at 26 without counting the ZZZ"s that will make it. By my estimation we are looking at 15-20 of them making it if we don't block them a little better than we have been. ... If you can please pick up at least 20 to 30 hours (2-3) shifts a week or more if you can. This will make a big difference for us next year if we can limit how many get in with us. Once again I did not send this for everyone to respond I'm just giving the information that I know and asking if you can block a few shifts a week it will make the difference in maybe 5-10 of the ZZZs not making it. I don't have Misroon, Wilson, Kitchens or Youmans number so if you have it their number pass this info on to them."

27. What the above group text entails is this, Mr. Gunby and **all** others knew that upon accumulating at least 700 work hours during the 2020-2021 calendar year, Bazemore would have been lodged in their category and obtained AA seniority status along with them.

8

28. Member Gunby was bent on signaling out and discriminating against "15-20 of them" (ZZZ) bargaining unit members to prevent them from making any work hours, to hinder Plaintiff(s) from being joined in and taking on the next seniority alphabet drop of "AA"—a discriminatory act the Defendant furthered and help bring into fruition by way of, but not limited to, an unconstitutional waiver.

29. During the contract year of 2020-2021, however, the ZZZ classified group consisted of approximately one hundred twelve (**112**) members (i.e., 90 whites and 22 blacks); yet, Mr. Gunby's group text referenced and was only concerned with the approximate 22 African Americans of the entire group of (**112**) zzz members.

30. Defendant hinders Bazemore from advancing to AA seniority, despite the fact, all said members performed the same job functions and to whom accumulated at least 700 work hours during the 2020-2021 contract year.

31. In its grave attempt to assure the disgruntled white members that the approximate twenty-two (22) African American CNC would not take on AA seniority classification or be lodged with/in the predominantly white group of members, Defendant, in the eleventh hour, commenced to disadvantageously revise the MOU, the checkers and clerks agreements, etc., all of which was maliciously

implemented to solely hinder Bazemore/Plaintiff(s) from advancing in the Defendant's workplace.[3]

32. Continually showing its allegiance to the disgruntled group of white members and further assuring said members that those 22 African American members (16 females and 6 males) will not be joined in their category or awarded AA seniority classification with them, Defendant concocted an unconstitutional waiver to have a certain group of members (Plaintiff(s)) sign under coercion and duress to say: "Sign or leave, and if you don't sign, then you don't have a job."[4]

---

[3] Some of the exceptions intentionally implemented by Defendant to exclude Bazemore from advancing to AA seniority along with Gunby and others, the newly revised MOU unfairly states in part: ". . . any individuals dispatched by the Clerk's Dispatcher who have earned a minimum of 700 hours or more in the 2020-2021 year will be placed on the Clerk's Seniority List into seniority classification group AA. This group **does not** include any Clerk and Checker personnel on the Clerk's "Emergency List." Further adding: "Commencing with the 2021-2022 Contract Year, ALL INDIVIDUALS who earn a minimum of 700 hours (COUNTING BOTH CLERKS AND CHECKER AND DECK AND DOCK HOURS) will be placed on the Clerks Seniority List and moved to the seniority classification created for the year in which the individual qualified. (Example: Those individuals who work at least 700 … hours in the 2021-2022 Contract Year will be placed in Clerk Seniority Classification HH)." Id. (See ILA1475.com website, under Documents tab-MOU, the 10-11-21 amendment to MOU at paragraph 19).

[4] Importantly, the waiver in question, was not personally signed by Bazemore herself. This is buttressed by the fact, while Bazemore was at the hospital with her ailing mother, who was literally on her deathbed, Bazemore received a call from the business agent (Curtis Jenkins) to say: "[S]hannon, this is your last day to sign this waiver, and if you don't sign it, then you won't have a job." Bazemore responded: "[W]ell, I'm at the hospital with my mother, and I'm not going to be able to make it." The business agent (Curtis Jenkins) then stated: "[O]k, we will get Nedra to sign it for you." *(Nedra Cook is one of the 22 African American bargaining unit members listed on page 13 at footnote 5).

33. Incomprehensibly, paragraph 5 of the waiver unfairly reads: "Any hours worked before the creation of any future list(s) being established WILL NOT QUALIFY AS CREDITED HOURS toward SENIORITY under the CBA."

34. To make bad matters worse, and changing the rules as they go, after classifying Jimmy Gunby and the predominantly group of white members with AA seniority, to which Bazemore is also rightfully deserving of, Defendant immediately abrogated the unconstitutional waiver and subsequently awarded Bazemore with the unfairly degrading seniority classification of HH1.

35. Upon having a total disregard for fairness and equal treatment to all members alike, Defendant appears to be living in the year 1964 as opposed to 2024, a day in time when Title VII of the Civil Rights Act of 1964 abolished all forms of segregation and especially discrimination in the workplace. Stated more succinctly, after depriving Bazemore of her AA seniority status and awarding her with the less fortune seniority classification of HH1, Bazemore has been unfairly compelled to take a seat at the back of the bus and now wait for years until all the vacant seniority classifications that currently precedes her (DD through GG) are filled with groups of predominantly white members to whatever capacity Defendant so determines.

36. Meaning, Defendant has already proceeded to fill seniority classifications AA through CC, and it will take several years for Defendant to fill

11

seniority classifications DD through GG with groups of solely white members (migrating over from DND) to precede Plaintiff(s) in seniority who would have first draw at the best jobs.[5]

37. After the mental anguish of being displeased with all the disadvantageous rule changes; implementation of unconstitutional waivers; the countless number of unfair employment practices; the intentional discrimination of Defendant going great lengths to not (equally) award/hindered Plaintiff(s) from AA seniority advancement; not to exclude, the blatant discrimination alleged which appears on its face to be racially geared towards 22 African Americans members; the segregated list, coupled with the fact, Defendant's disparate seniority system is far from being implemented in a non-discriminatory manner, etc., Bazemore timely launched a Charge with the EEOC.

38. The timeliness of Bazemore's Charge filed with the EEOC can be gleaned from the on or about March 3, 2022 date, Bazemore was being treated

---

[5] Even more confusing and far from being understood, Defendant went extra miles to hinder Plaintiff(s) from being co-joined/awarded AA seniority classification along with the group of employees whom Plaintiff(s) accumulated at least 700 work hours along with (i.e., along with member Gunby and others members during 2020-2021 contract year); yet, Defendant continues to change the rules as they go and has contrarily co-joined twenty-nine (29) additional employees along with Bazemore's group and awarded those 29 employees with HH1 seniority classification, notwithstanding the fact, these 29 employees so joined **did not accumulate** at least 700 work hours, along with Bazemore during the contract year of 2020-2021.

unfairly and not awarded the AA seniority classification she was entitled, as was awarded to Jimmy Gunby and the predominantly white group of members.

39. Bazemore's Charge with the EEOC was timely filed on September 1, 2022, well within 180 days from the date she was aggrieved, being unfairly treated and discriminated against by Defendant.

40. On December 2, 2022, Defendant's attorney (Charles Herman) filed its Position Statement with the EEOC in response to Bazemore's Charge of Discrimination.

41. On January 30, 2023, Bazemore filed her counter-response/rebuttal in opposition to the Position Statement filed by Defendant's attorney.

42. On or about June 20, 2023, after having previously joined a large group of non-qualified members to Defendant's already large group of approximately 112 members, Defendant separated the larger group of unwarranted members from Bazemore's group, and unfairly allowed 29 of those non-qualified members to remain in Bazemore's classified group.

43. Defendant then awarded Plaintiff(s) with HH1 seniority classification and gave a larger/ remainder group of separated members with the seniority classification of HH2.

44. After being displeased with Defendant's actions of lodging Bazemore in HH1 seniority category, when Bazemore is rightfully due AA seniority

classification, on July 1, 2023, Bazemore filed an amendment to her pending EEOC Charge regarding the same.

45. On September 1, 2023, Bazemore launched her second amendment with the EEOC seeking leave to join/add twenty-one (21) additional African Americans from her group of approximately 112 bargaining unit members.

46. Plaintiff(s) strenuously abhor, objects to, and contest Defendant's unfair employment practices and now seeks to collectively combat the never-ending discriminatory acts via this potential class action.[6]

47. Shortly after receiving Bazemore's second amendment, the EEOC, on September 29, 2023, immediately entered its Determination, concluded its investigation, and dismissed the Charge of Bazemore.

48. Pursuant to Title 28 U.S.C. § 1746, Bazemore declares under penalty of perjury that all the facts tendered are true and correct to the best of her knowledge.

---

[6] Should the Court certify this as a Class Action, the names of all twenty-two African Americans who would be associated with this Complaint, via Bazemore's second amendment filed with EEOC, are as follows: 1. Cornelius Alvin; 2. Shannon Bazemore; 3. Stephen Brown; 4. Sharonta Butler; 5. Damon Christian; 6. Nedra Cook; 7. Brittany Fields; 8. Sherri Gardener; 9. Tieara Gillison; 10. Gary Gladney; 11. Phyllis Green; 12. Marckinia Jeff; 13. Tiffany Jones-Johnson; 14. Anwaar McPherson; 15. Wahkeisha Murchinson; 16. Tammy Randle; 17. James Ransom; 18. Jasmyne Samuel; 19. Marie Samuel; 20. Armeisha Smith; 21. Shannon Smith and 22. Regina Taylor. *[Consisting of sixteen (16) African American minority females and six (6) African American minority males, respectively].

49. Bazemore presents this civil action in good faith and submits that based upon the conclusive facts and factual allegations asserted herein, this civil action appears on its face to be highly meritorious.

50. Bazemore respectfully submits to have stated a myriad of claim(s) upon which relief can be granted as a matter of law and right.

51. The cumulative effect of the practices complained of above explicitly deprives Bazemore of equal employment opportunities and otherwise adversely affect her status as a member because of her race (via group text).

52. Defendant turns a blind eye to such prohibited actions of its members, and not only condones and tolerates such actions of discrimination in its workplace, but Defendant likewise discriminated against Bazemore so as hinder her and 21 additional African Americans from obtaining her/their just due of advancing to AA seniority classification.

53. The unlawful employment practices complained of above were intentional; they were done with malice or with reckless indifference to the federally protected rights of Bazemore.

## **PRAYER FOR RELIEF**

Wherefore, premises considered, Plaintiff Bazemore respectfully request this Honorable Court to:

A.   Grant a permanent injunction enjoining Defendant, its superiors, members, officers, agents, attorneys and all persons in active concert or participation with it, from creating a work environment that is hostile to African American members and immediately discharge any members (past/present) who engaged/engages in any unfair employment practices of discriminating against any member/employee based on race, as shown above, or otherwise.

B.   Grant injunctive relief to immediately abolish Defendant's newly implemented revisions of pre-awarding groups of white members reserved seniority status from BB through GG.

C.   Order Defendant to cease filling any more seniority classifications from CC through GG.

D.   Order Defendant to institute fair practices and carry out procedures and policies, as they relate to seniority classifications, so as to provide equal employment opportunities for all African Americans in a non-discriminatory manner as well as to eradicate the effects of past and present unlawful employment practices.

E.   Order Defendant to make Bazemore/Plaintiff(s) whole by awarding Plaintiff(s) with AA seniority classification which Bazemore was entitled and to

which should have been equally and fairly awarded to Bazemore from March 3, 2022, the on or about date Jimmy Gunby and the predominantly group of white members were awarded AA seniority for accumulating at least 700 work hours during calendar year of October 1, 2020 through September 30, 2021.

  F. Order Defendant to make Bazemore/Plaintiff(s) whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and any other affirmative relief necessary to further eradicate the effects of its unlawful employment practices of depriving Plaintiff(s) of AA seniority which would have subjected Plaintiff(s) to have worked every day (since March 3, 2023), if they so choose, with opportunity to have first draw at the best jobs.

  G. Order Defendant to make Bazemore/Plaintiff(s) whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

  H. Order Defendant to make Bazemore/Plaintiff(s) whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including emotional pain, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

  I. Order Defendant to pay Bazemore/Plaintiff(s) punitive damages, in amounts to be determined at trial—not only for Defendant's malicious and reckless conduct to intentionally discriminate against Bazemore via unconstitutional waivers

and disadvantageous last-minute revisions to MOU but also where Defendant condones and tolerates its members to racially discriminate against Bazemore/former zzz member, to hinder Bazemore's/former zzz members from advancing in its workplace.

J. Grant any such further relief as the Court deems just and appropriate in the public interest.

## JURY TRIAL DEMAND

The Plaintiff respectfully requests a jury trial on all questions raised and facts tendered within this Complaint.

Respectfully submitted,

Shannon Bazemore, pro se
8 Saint Charles Drive
Guyton, Georgia 31312
(912) 323-4672
shannonbmore@icloud.com