IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| SHANNON BAZEMORE, | |
| Plaintiffs, | CIVIL ACTION NO.: 4:23-cv-372 |
| v. | |
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION LOCAL 1475 CLERKS AND CHECKERS UNION, INC., | |
| Defendant. | |

**O R D E R**

Pro se Plaintiff Shannon Bazemore sued Defendant International Longshoreman's Association Local 1475 Clerks and Checkers Union, Inc.'s ("Local 1475") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and under Title I of the Civil Rights Act of 1991, which is codified at 42 U.S.C. § 1981a,[1] alleging that she was discriminated against because of her race. (Doc. 1.)  Presently before the Court is Local 1475's Motion to Dismiss, (doc. 12), and Request for Judicial Notice in Support of its Motion to Dismiss, (doc. 14). Local 1475 moves to dismiss the Complaint, arguing that Bazemore failed to exhaust her administrative remedies before filing suit and that she has failed to plead facts to support a claim of racial discrimination under Title VII. (Doc. 13.)  For the reasons discussed below, the Court

---

[1] Title I of the Civil Rights Act of 1991 is codified at 42 U.S.C. § 1981a. Section § 1981a broadened the remedies available to successful Title VII litigants. See 42 U.S.C. § 1981a, 2000e-5(g). It does not provide an independent cause of action. Riles v. Augusta-Richmond Cnty. Comm'n, No. CV 116-214, 2017 WL 3597488, at *2 (S.D. Ga. Aug. 21, 2017).

**GRANTS** Local 1475's Request for Judicial Notice as unopposed, (doc. 14), and **GRANTS** Local 1475's Motion to Dismiss, (doc. 12).

## BACKGROUND

**I.     Bazemore's Employment with Local 1475 and Seniority Status**

Local 1475 is a local labor organization that serves as the bargaining representative for clerks and checkers in the Port of Savannah. (Doc. 1, p. 3.) Local 1475 employs/represents at least 150 bargaining unit members and is party to a collective bargaining agreement ("CBA") with the Georgia Stevedore Association. (Id. at p. 4.) Bazemore, an African-American woman, works as a clerk and checker and is a bargaining unit member represented by Local 1475. (Id. at pp. 3, 5.)

Local 1475 operates a hiring hall where it assigns work to clerks and checkers in accordance with the order set forth in the CBA, referred to as the Savannah Clerks and Checkers Seniority Plan ("Seniority Plan"). (Doc. 1, p. 3; doc 14-1.)[2] Under the Seniority Plan, clerks and checkers are divided into "Classes." (See doc. 14-1.) Each Class consists of clerks and checkers who achieved at least 700 hours of work in a specific "contract year" and maintained 700 hours of work in each contract year thereafter. (Id. at p. 2.) Under the Seniority Plan, contract years begin on October 1 and end on September 30, and are designated by the calendar years they straddle (e.g., 2023–24). (Id. at p. 4.) Before medical benefits, a pension plan, or seniority status can be acquired, a member must accumulate and maintain at least 700 work hours during a calendar year. (Doc. 1, p. 6.)

---

[2] For the reasons discussed in Discussion Section I, infra, the Court has taken judicial notice of certain undisputed facts even though they were not included in the Complaint.

Bazemore was hired by Local 1475 to work as a clerk and checker in September 2020, as part of an "emergency street list" (the "Emergency List"). (Id.) During the 2020–21 contract year, Bazemore obtained at least 700 hours worked. (Id.) Bazemore's seniority classification was "ZZZ" because of her presence on the Emergency List. (Id.) Class ZZZ contained 112 members: 22 African American workers and 90 white workers. (Id. at p. 9.) Bazemore received communication from Local 1475 that, although she "performed the same job functions, worked through the pandemic, and accumulated 700 work hours during the contract year 2020–21," she did not obtain "AA" seniority because she was hired from the Emergency List. (Id. at p. 6.)

In September 2021, Local 1475 required members on the Emergency List to sign a waiver of seniority rights, which stated that "[a]ny hours worked before the creation of any future list(s) being established will not qualify as credited hours toward seniority under the CBA." (Id. at pp. 10–11; doc. 14-4. p. 2.) Bazemore herself did not sign this waiver and another member of the Emergency List signed it for her. (Doc. 1, p. 10 n.4.)

Local 1475 entered into a Memorandum of understanding on October 1, 2021 ("2021 MOU") to supplement the Seniority List. (Doc. 14-2.) Under the 2021 MOU, all workers on the Emergency List who earned 700 hours in the 2020–21 contract year were put on "Extra List 5," effective October 1, 2021, which would put them in Class HH. (Id. at p. 5.) Workers who were on Extra Lists 1, 2, 3, or 4 (and thus not on the Emergency List) who worked 700 hours in the 2020–21 contract year were eligible for Class AA seniority status.[3] (Id. at pp. 2–3.) The 2021 MOU did not mention race. (See generally id.)

---

[3] Bazemore also alleges that, "in the eleventh hour[,]" Local 1475 "disadvantageously revise[d] the MOU." (Doc. 1, pp. 9–10.) The Complaint does not clarify what was revised or how Bazemore would have been classified before the alleged revision. (Id.)

3

Before the end of contract year 2021–22, a white bargaining member, Jimmy Gunby, sent out a group text to other white bargaining members. (Doc. 1, p. 8.) The body of the text read in relevant part:

> "[H]ello everyone this is Jimmy Gunby[.] This text is for information only please don't respond to this group text. [Extra] List 5 will not go into effect until October 1st, which means all the ZZZ's that make their hours will be in our category . . . . The total for our category is sitting at 26 without counting the ZZZ's that will make it. By my estimation we are looking at 15–20 of them making it if we don't block them a little better than we have been. . . . If you can please pick up at least 20 to 30 hours (2–3) shifts a week or more if you can. This will make a big difference for us next year if we can limit how many get in with us. Once again I did not send this for everyone to respond I'm just giving the information that I know and asking if you can block a few shifts a week it will make the difference in maybe 5–10 of the ZZZ's not making it."

(Id.)

Bazemore later lodged a racial discrimination grievance against Local 1475 and emailed it to various Local 1475 officials. (Id. at p. 7.) In response to the grievance, Bazemore was made to participate in a video teleconference on March 3, 2022. (Id.) During the teleconference, it was communicated to Bazemore that, although she would not receive AA seniority, those who worked on the Emergency List would be awarded HH seniority rights "sometime in the near future" to recognize the work they performed during the pandemic. (Id.) Bazemore received HH seniority status at the end of the 2021–22 contract year. (Id. at p. 13.)

On June 1, 2023, Local 1475 enacted an Addendum to the 2021 MOI ("2023 Addendum"). (Doc. 14-3.) The 2023 Addendum subdivided Class HH into two Subclasses designated as HH-1 and HH-2. (Id. at p. 3.) The 2023 MOU defined Subclass HH-1 as

> All individuals who worked at least 700 hours through the Local 1475 hiring system during both the 2020–21 and 2021–22 Contract Years, and all individuals who were on an [E]mergency [L]ist during the 2020–21 Contract Year and worked at least 700 hours through the Local 1475 hiring system during the 2021–22 Contract Year.

4

(Id.)  Class HH-2 was defined as "[a]ll other individuals who worked at least 700 hours through the Local 1475 hiring system during the 2021–22 Contract Year."  (Id.)  The 2023 MOU further provided, "[f]or purposes of hiring preference within in the HH classification, all members of the Sub-classification HH-1 will be referred work they are qualified to perform before any jobs are offered to members of Sub-classification HH-2."  (Id.)  Bazemore ultimately received HH-1 status.  (Doc. 1, p. 11.)

## II.  Procedural History

Bazemore filed her charge with the EEOC ("Charge") on September 1, 2022,[4] alleging she was unfairly treated and discriminated against.  (Id. at p. 13.)  Bazemore alleged that she was made to sign a waiver in September 2021 stating that hours would not count toward advancement to the next seniority level.  (Doc. 14-4, p. 2.)  She alleged that she complained of this, met with Local 1475 on March 3, 2022, and soon after, "a new policy was implemented to place [Bazemore] and others denied advancement into a less desirable category as well as extending the hour requirement needed for advancement."  (Id.)  On December 1, 2022, Local 1475 filed its "Position Statement" with the EEOC in response to Bazemore's charge.  (Doc. 1, p. 13.)  On January 30, 2023, Bazemore filed a counter-response in opposition to Defendant's Position Statement.  (Id.)

On July 1, 2023, Bazemore filed an amendment to her pending EEOC charge regarding the 2023 Addendum and her receipt of HH-1 status instead of AA status.  (Id. at pp. 13–14.)  On September 1, 2023, she again amended her EEOC charge, seeking to join the twenty-one other African American bargaining unit members assigned HH seniority status.  (Id. at p. 14.)  On

---

[4]  The Court notes the inconsistencies in the briefing regarding what date the Charge was filed.  In the Complaint, Bazemore alleges that she timely filed the Charge on September 1, 2022.  (Doc. 1, p. 13.)  But the Charge itself states that it was digitally signed by Bazemore on August 13, 2022.  (Doc. 14-4, p. 2.)  Because the Charge does not make clear that it was filed on the day it was signed, the Court will follow the date alleged in the Complaint.

5

September 29, 2023, the EEOC concluded its investigation and dismissed Bazemore's Charge. (Id. at p. 14.)

Bazemore sued Local 1475 on December 28, 2023. (Doc. 1.) In the Complaint, Bazemore brings one claim of racial discrimination under Title VII, alleging that Local 1475 engaged in racially discriminatory employment practices through its enforcement of the 2021 MOU and the 2023 Addendum. (See generally id.)

Local 1475 filed the at-issue Motion to Dismiss on February 12, 2024, arguing that the Court should dismiss this action because Bazemore (1) failed to exhaust her administrative remedies under Title VII, and (2) failed to plead facts sufficient to support a claim of racial discrimination. (Doc. 12.) Local 1475 also requests that the Court take judicial notice of the Seniority Plain, the 2021 MOU, the 2023 Addendum, Bazemore's EEOC charge, and the dismissal of another bargaining member's previously-filed grievance. (Doc. 14.) Bazemore filed a Response to the Motion to Dismiss, (doc. 15), but did not respond to Local 1475's Request for Judicial Notice. Local 1475 filed a Reply, (doc. 17), and Bazemore filed a Sur-Reply, (doc. 20).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Ashcroft, 556 U.S. at 678).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft, 556 U.S. at 678 (internal quotation marks and citation omitted). Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

Additionally, in its analysis, the Court will abide by the long-standing principle that pleadings drafted by unrepresented parties are held to a less stringent standard than those drafted by attorneys and therefore must be liberally construed. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). However, a party's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**DISCUSSION**

**I.      Judicial Notice (Doc. 14.)**

In connection with its Motion to Dismiss, Local 1475 moves the Court to take judicial notice of certain facts on which it relies in its briefing. (See generally doc. 14.) Specifically, Local 1475 asks the Court to take judicial notice of (1) the Seniority Plan; (2) the 2021 MOU; (3) the 2023 Addendum; and (4) Bazemore's EEOC Charge. (Id. at pp. 1–2.)[5]

A court on its own and at any time may judicially notice a fact that cannot be reasonably disputed because it either is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned.[6] Fed. R. Evid. 201(b)–(d). As Local 1475 highlights in its Reply, Bazemore failed to object to the Judicial Notice Request.[7] (Doc. 17, p. 1.) The Request is thus unopposed. See L.R. 7.5 ("Failure to respond . . . shall indicate that

---

[5] Local 1475 also asks the Court to take judicial notice of the National Labor Relations Board ("NLRB") Office of General Counsel's letter, dated January 23, 2024, denying an appeal filed following the NLRB's dismissal of another bargaining unit member's grievance. (Doc. 14, p. 2.) Local 1475 mentions this document just once in its briefing, and the Court is hard pressed to find its relevance. While Bazemore does not object to the Court taking judicial notice of this document, (doc. 20, pp. 1–2), because it is not pertinent to this case, there is no reason to take judicial notice of the document currently.

[6] The Court's consideration of these documents does not convert Local 1475's Motion to a motion for summary judgment. "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). Bazemore's claims are centered around the application of the 2021 MOU and the 2023 Addendum. (See generally doc. 1.) Moreover, "[i]n discrimination cases, the EEOC charge is a document that courts routinely consider when ruling on motions to dismiss, even if it was not attached to a pleading." Chesnut v. Ethan Allen Retail, Inc., 971 F. Supp. 2d 1223, 1228 (N.D. Ga. 2013); see also Sessom v. Wellstar Hosp., 1:08-cv-2057-TWT, 2009 WL 1562876, *3 n.1 (N.D. Ga. May 29, 2009) ("The EEOC charge is properly considered on the motion to dismiss because [p]laintiff has not disputed its authenticity and refers to it in her [c]omplaint."). If a court takes judicial notice of documents pertinent to a motion to dismiss, it need not convert the motion to dismiss into a motion for summary judgment. Horne v. Potter, 392 F. App'x. 800, 802 (11th Cir. 2010).

[7] Indeed, in her Sur-Reply, Bazemore candidly notes that she did not object and instead states her belief that the documents "amply support [her] position(s) as to how Local 1475 intentionally made grave revisions and disadvantageous exceptions to single-handedly exclude and hinder [her] advancement/promotion to AA seniority." (Doc. 20, pp. 1–2.)

there is no opposition to a motion."). Given that each of the requested documents appears in the Complaint, and Bazemore does not contend that any of their contents could be reasonably disputed, the Court **GRANTS** Local 1475's Request as to (1) the Seniority Plan; (2) the 2021 MOU; (3) the 2023 Addendum; and (4) Bazemore's EEOC Charge. (Doc. 14.)

II.     **Failure to Exhaust Administrative Remedies**

Local 1475 first moves to dismiss Bazemore's Complaint, arguing that she failed to exhaust her administrative remedies before filing suit. (Doc. 13, pp. 6–8.) "An employee must exhaust administrative remedies before filing a complaint of discrimination under Title VII[.]" Stamper v. Duval Cty. Sch. Bd., 863 F.3d 1336, 1339 (11th Cir. 2017). The first step in exhausting administrative remedies is timely filing a charge with the EEOC. Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001); 42 § 2000e–5(e)(1). Title VII requires that a charge be filed with the EEOC within 180 days of the date of the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1).

Additionally, a charge with the EEOC must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). This includes the names of the parties and "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3). A motion to dismiss is properly granted when the plaintiff failed to raise the challenged claims to the EEOC in a formal charge of discrimination. Lambert v. Ala. Dep't. of Youth Servs., 150 F. App'x 990, 994 (11th Cir. 2005).

Bazemore filed the Charge with the EEOC on September 1, 2022. (Doc. 1, p. 13.) In the Charge, Bazemore alleges that, "[i]n or around September 2021," Local 1475 made her sign a seniority waiver, that she met with Local 1475 after complaining about this waiver, and that Local

9

1475 soon after implemented a new policy that placed her in a "less desirable category." (Doc. 14-4, p. 2.) With no further allegations, the Court interprets her reference to a "less desirable category" to mean the enactment of the 2021 MOU and her eventual placement in Class HH instead of Class AA as she desired. Accordingly, the Court looks to whether Bazemore timely filed her claims and whether the challenged actions occurred after March 5, 2022 (180 days before her filing on September 1, 2022).

Insofar as Bazemore challenges the Emergency List altogether, Bazemore was hired off the Emergency List in September 2020. Bazemore alleges that those on the Emergency List were then made to sign a waiver of seniority status sometime "in or around September 2021." (Id.) Both these acts occurred over a year before Bazemore filed her Charge and accordingly fall well outside the statutory 180-day period.

Likewise, Plaintiff challenges the 2021 MOU's language making her eligible for Class HH if she completed 700 hours in the 2021–22 contract year. (Doc. 14-2, pp. 5, 7.) The 2021 MOU went into effect in October 2021, eleven months before Bazemore filed her charge. (See generally id.) Bazemore complained about the waiver and the 2021 MOU to Local 1475, which resulted in a meeting on March 3, 2022. Bazemore alleges she was told she would soon have more favorable seniority status (assuming she met the requirement of 700 hours worked for that contract year per the terms of the 2021 MOU), but she alleges no other particular conduct occurred in that meeting.

In Response, Bazemore argues that "it is not the actual action of creating or splitting [the HH Class] that she contends is discrimination," but rather that the 2021 MOU and the 2023 Addendum are "being disadvantageously and unfairly applied to exclude and make disparate exceptions when it comes to Bazemore advancing to AA seniority." (Doc. 15, p. 6.) The Court is lost on this distinction. Bazemore's primary complaint here is that she was made to sign a waiver

of seniority rights and that, to gain any seniority rights, she was made to meet an additional 700-hour requirement in the 2021–22 contract year under the 2021 MOU.  The Waiver and the 2021 MOU were effectuated in September 2021 and October 2021 respectively—around a year before Bazemore filed her Charge.  While Bazemore may not have actually received Class HH status until the completion of the 2021–22 contract year, she was aware of the terms well before then (as evidenced through her complaint and meeting with Local 1475 leadership), and she has not alleged that the Waiver or the 2021 MOU are not being applied in accordance with their terms (much less that they are being applied in a disparate fashion).  Whether she is challenging when the waiver was signed or when she achieved HH status is a moot point; her challenge here is to the actual terms of the 2021 MOU, which went into effect in October 2021.

Because the discrete acts challenged in her EEOC Charge occurred over 180 days before she filed the Charge, Plaintiff failed to timely file a charge with the EEOC and thus dismissal is proper for failure to exhaust her administrative remedies.[8]

## III.     Failure to Plead a Claim of Racial Discrimination

Moreover, even if the Court were to assume that Bazemore had fully exhausted her administrative remedies on all her challenged actions, she has still failed to allege facts sufficient to support her claim of racial discrimination under Title VII.  Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  "To state a race-discrimination

---

[8] Local 1475 also argues that the amendments attached to Bazemore's Charge were unverified and made distinct claims from her original charge and thus cannot relate back to her initial date of filing. (Doc. 13, pp. 8–10.)  Because the Court finds that Bazemore failed to exhaust her administrative remedies through her initial EEOC charge, it need not consider whether any amendments thereto were properly filed.

claim under Title VII, a complaint need only 'provide enough factual matter (taken as true) to suggest intentional race discrimination.'" Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015) (quoting Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 974 (11th Cir. 2008)). Specifically, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." Lewis v. City of Union City, 918 F.3d 1213, 1220–21 (11th Cir. 2019). Bazemore has failed to plead sufficient facts to support a claim under Title VII.

Bazemore's claim can be boiled down to her dissatisfaction with her seniority status. She believes she is entitled to AA seniority status and seemingly believes this is racially discriminatory because other employees were afforded seniority status when she, and other members on the Emergency List, were not. What Bazemore has failed to do, throughout her Complaint and briefing, is show that she was treated any differently than anyone outside her protected class, or that African-American members on the Emergency List were treated differently than others on the List. Indeed, she consistently argues that *all* members on the Emergency List—regardless of race—were discriminated against in that they were improperly deprived of AA seniority status, were made to sign a waiver, and condemned to Class HH status. (See, e.g., doc. 1, p. 7 (alleging all members of Class ZZZ—the Emergency List—would not be awarded AA status despite working 700 hours in the 2020–21 contract year); doc. 15, p. 2 (referring to the white members on the Emergency List as individuals "who are unfortunately compelled to suffer along with the 22 blacks so Local 1475 can proceed with its unfairly intended plans").) Indeed, Bazemore, in her briefing, candidly states that her claim of discrimination is "not based upon or limited solely to

12

'race' but as an employee as well." (Doc. 15, pp. 12–13.) These facts cannot support a claim of racial discrimination.

The Court cannot find any facts (beyond mere conclusory allegations) that Defendants racially discriminated against Bazemore or African Americans in general. The Emergency List members began work in 2020, were made to sign a waiver of their seniority rights at the start of the 2021–22 calendar year, and were assigned HH seniority by the 2021 MOU if they completed their hours in the following contract year. The 2023 Addendum then implemented a class split, allowing those Emergency List members who met their hours in 2021–22 to receive HH-1 seniority over those non-Emergency List members who worked for the first time in that contract year. The creation of Class HH and the splitting of the HH Class were based on objective factors unrelated to race: hours worked in a given calendar year and presence on the Emergency List. While Bazemore may disagree with the use of the Emergency List as a metric in making these distinctions, or the use of a waiver against the Emergency List—she does not show how these means were not objective metrics, or that they were otherwise used to mask racial discrimination. Indeed, as already mentioned, the Emergency List was mostly made up of white workers (90 out of 112). "[E]mployers are free to [take an adverse action against] their employees for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as [the] action is not for a discriminatory reason." Flowers v. Troup Cnty. Sch. Dist., 803 F.3d 1327, 1338 (11th Cir. 2015) (internal quotation marks omitted). While Bazemore questions Local 1475's treatment of the Emergency List members, nothing in the Complaint indicates that such treatment related to the members' race.

The sole evidence Bazemore offers to support her claim of racial discrimination is her personal interpretation of Gunby's text message. (Doc. 15, p. 13 ("[R]ace did not become an issue

13

until Gunby's group text surfaced, which . . . Local 1475 appears to tolerate and condone.").) Gunby is not named as a party to this action, nor has Bazemore submitted any evidence indicating that he was acting on behalf of Local 1475 when he sent his text message.[9]  Even assuming Gunby was acting on behalf of the union, nothing in the text message supports Bazemore's racial discrimination claim.

Bazemore has failed to allege anything, beyond mere speculation, indicating that Gunby's text related to race.  As far as the Court can make out, the message encouraged other members of a favorable class to work extra shifts to limit expansion of the class and thus better protect their class size.  The message talks vaguely about attempting to block some of the fifteen to twenty people in class ZZZ that Gunby projected would otherwise be added to the favorable class when List 5 went into effect.  There is no mention of race, nor is there any other comment indicating that Gunby was motivated by anything besides trying to maintain his own seniority privileges.[10]

---

[9] In an attempt to make Gunby's actions attributable to Local 1475, Bazemore cites Local 1475's Policy against harassment, discrimination, and retaliation.  (Doc. 15, pp. 14–15.)  Simply because Local 1475 maintains a policy against racial discrimination does not make Gunby's words attributable to Local 1475, particularly when Bazemore has not alleged that Local 1475 was aware of the text message.

[10] Bazemore seems to interpret Gunby's reference of fifteen to twenty members of class ZZZ as a reference to the twenty-two African Americans in that class.  (Doc. 1, p. 9 ("Gunby's group text . . . was only concerned with the approximate 22 African Americans").)  That is, as far as the Court can make out, Bazemore interprets this comment to mean that Gunby is only concerned about the African Americans in class ZZZ being awarded higher seniority and is only concerned with blocking their presence on the higher seniority lost.  There is no support for this interpretation, however.  To the contrary, the text specifies that "all ZZZs that make their hours will be in our category," that Gunby estimates fifteen to twenty ZZZs will meet this hour count, which would double his own seniority group, and urges his colleagues to pick up extra shifts in hopes of "maybe 5–10 of the ZZZs not making it."  The ZZZ class was made up of 112 individuals—90 white and 22 black.  There is no indication that all or most of the ZZZs who were likely to make their hours were African American.  The plain meaning of this text suggests that he is urging his colleagues in the higher seniority group to work more hours to cut the amount of ZZZs—regardless of race—who would be promoted to his class.  With no additional allegation to suggest Gunby's racial animus, the text message lends no support to Bazemore's claim that he was targeting her and African American members of class ZZZ.

In sum, Bazemore has failed to allege any facts that would give rise to a claim of racial discrimination and has posed a claim that is purely speculative.[11] There is no indication in the Complaint or the judicially noticed documents that the seniority assignments were not based on objective criteria or otherwise used race as a factor. Nor does the Complaint allege that any African Americans present on the Emergency List were treated any differently than others on the Emergency List. Accordingly, absent any allegation of racial discrimination, Bazemore's claim is due to be dismissed.

## CONCLUSION

For the reasons stated above, Bazemore has failed to plead facts sufficient to support a claim under Title VII. While Bazemore may be unhappy with her seniority status and the seniority system Local 1475 employed, she has not shown that any classifications were racially motivated. Accordingly, the Court **GRANTS** Local 1475's Request for Judicial Notice, (doc. 14), and **GRANTS** Local 1475's Motion to Dismiss, (doc. 12). The Court thereby **DISMISSES** Bazemore's action against Defendant International Longshoreman's Association Local 1475 Clerks and Checkers Union, Inc. and **DIRECTS** the Clerk of Court to **CLOSE** this case.

**SO ORDERED**, this 22nd day of August, 2024.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[11] Indeed, Bazemore highlights the speculative nature of her claim in her Response, asking a series of hypothetical questions about whether Gunby would have sent the text if the list was only comprised of white members, and responding to her own questions with "[m]any would beg to differ." (Doc. 15, p. 2.)