IN THE UNTED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2024 SEP 19 ₽ 3: 59

SHANNON BAZEMORE,                               )
                                                )
        Plaintiff,                              )
                                                )
vs.                                             )       CIVIL ACTION NO.: 4:23-cv-372
                                                )       SO. DIST. OF GA.
INTERNATIONAL LONGSHOREMEN'S                    )
ASSOCIATION, ILA LOCAL 1475,                    )
                                                )
        Defendant.                              )

## FED.R.CIV.P. RULE 59(e) MOTION TO RECONSIDER AND FED.R.CIV.P. 60(b) MOTION SEEKING RELIEF FROM COURT'S AUGUST 22, 2024 ORDER.

Comes now the above named Plaintiff (hereinafter "Bazemore") who proceeds pro se in this matter, hereby respectfully moves this Honorable Court under Federal Rules of Civil Procedure 59(e) to reconsider August 22, 2024 adverse Order (Doc. 24), and pursuant to Federal Rules of Civil Procedure 60(b), Bazemore is compelled to seek relief from the Court's Order which contains mere oversights, mistakes and clear errors of law; thereby subjecting the Court's Order to no longer be equitable in light of Tynes v. Fla. Dept. of Juvenile Justice, 88 F.4th 939 (11th Cir. 2023).

Based upon the United States Constitution, the clear Title VII violations of Plaintiff's rights being blatantly and prejudicially violated to be discriminated against in Local 1475's workplace--along with the conclusive record facts and circumstantial evidence establishing a slew of plausible inferences  to suggest intentional race discrimination, the fundamental interest of

justice and fair procedures would dictate this Honorable Court to grant the prospective relief sought and shows unto the Court:

## BACKGROUND

### I.    Bazemore's Employment with Local 1475 and Seniority Status

For the sake of brevity, Plaintiff will more fully develop the record and will only take issue with the Court's findings which are in clear error based upon law and the compelling facts of this case. In so doing, beneath the above heading, Plaintiff would like to briefly expound on the facts stated by the Court:

> "Under the Seniority Plan, clerks and checkers are divided into "Classes." (See doc. 14-1). Each Class consists of clerks and checkers who achieved at least 700 hours of work in a specific "contract year" and maintained 700 hours of work in each contract year thereafter. (Id. at p.2).'"

(Doc. 24, p.2).

What the above entails is this, Gunby and all members who were referentially promoted to AA seniority class, when compared to Bazemore, were all casuals—meaning, members who never accumulated at least 700 hours within a calendar work year (e.g. September 30 through October 1st). With this borne in mind, Local 1475 created segregated list (Z1, Z2, Z3, Z4 and Bazemore at the back of the bus in the latter Z5 Class which stems from being pegged in ZZZ class based upon a segregated "Emergency List")[1].

---

[1] Class ZZZ consisted of 112 members: 22 African American workers and 90 white workers. As such, Gunby's group text is impliedly inferred to suggest, and reasonable jurist would be convinced to agree, that those 15-20 ZZZ employees referenced in said text was racially geared towards discriminating against the 22 African-American employees to hinder their advancement to AA seniority. Local 1475 did everything within its unlawful powers to not only see to it that Bazemore not be promoted/joined in their AA class, but once again placed Bazemore at the back of the bus, this time in HH1 seniority class—to be further preceded by preferentially awarded DND employees who obtained "reserved seniority status", but whom never accumulated at least 700 hours as a Checker and Clerk (CNC) in order to be permitted to **precede** Bazemore in seniority from BB-GG classes. Surely, Bazemore has and will continue to prove through enough factual matter, direct and circumstantial evidence, to further show how the Court committed clear when granting Defendant's Motion to Dismiss.

Local 1475 then commenced to change the rules and revised the MOU and Seniority Plan to Bazemore's unfair detriment and made grave exceptions and exclusions when it came to Plaintiff, so as to hinder her from being promoted to the AA seniority class she was entitled.

After being hired on (September 2020), Local 1475 then went on to segregate Bazemore by saying she was hired from an "Emergency List." Yet, once an employee/member is hired on with Local 1475, or any job for that matter and performs the same job duties as all other employees; makes at least 700 hours; receives a pension plan; medical benefits; etc., any form of segregation, discrimination or otherwise impliedly inferred racial discrimination has no legitimate interest in any workplace to hinder an employee from reaping the same promotional benefits/advancements to which all employees are entitled alike. It becomes an employment privilege rather than a desire.

All of the above is only said to support Plaintiff's contentions, claims and showings that Bazemore, Gunby, along with all employees/members who favorably received AA seniority, all of whom made **700 hours for the first time together during the calendar contract year of 2020-2021**, thus making them all be (**casuals**) within the same class and entitled to the same AA seniority class issued on March 8, 2022. Put another way, the previous Seniority Plan declared that any employee who makes 700 hours in a calendar will receive seniority. But for Local 1475 prejudicially, cleverly strategic and disadvantageously creating 2021 MOU, to revise Seniority Plan in the 11th hour, all to Bazemore's detriment. Had Local 1475 they not engaged in the unfair employment practices of segregating list into classes prior to the accumulation of 700 hours, and if Local 1475 did not unlawfully and illegally discredit all of Bazemore's already earned (700 plus during 2020-2021 contract year (CY)), Bazemore would have likewise been promoted to AA seniority class, along with Gunby and other similarly situated comparators, on March 8, 2022.

When taking the above facts and following facts into account as true, the Court's findings, as would be further shown below, are based upon a clear errors of law and facts, thus warranting the Court's Order to be reconsidered and vacated, as the rudimentary demands of justice would so require.

In direct contravention to the Court's reasoning that Bazemore's case hinges upon the MOU which took effect on October, 1, 2021 but what Plaintiff's case primarily rest upon is the future material date of **March 8, 2022**, (the day Bazemore was prejudicially aggrieved and discriminated against by Local 1475 via 2021 MOU, when Local 1475 preferentially awarded a predominantly group of white employees AA seniority, but went on to do every imaginable illegal act so as to hinder and prevent Bazemore from also being promoted to the AA seniority she was entitled to--instead, Bazemore was unlawfully discriminated against and forced to ultimately settle for HH1 seniority class to incomprehensibly have groups of predominantly white employees to precede Plaintiff in seniority classes from BB-GG, despite the fact, these groups of Deck and Dock (DND) employees never made at least 700 hours prior to/along with Bazemore as a Checker and Clerk (CNC)). Indeed, this can be nothing less than discrimination.

## II.    Procedural History

Under the above heading, Plaintiff will take issue with the first sentence of the Court's Order. (Doc. 24, p.5). In so doing, and contrary to the Court's erroneous finding, Bazemore filed her Charge with the EEOC on August 13, 2022.[2] As the record assertively establishes, what Bazemore clearly filed with the EEOC on September 1, 2022, was an Amendment.

_____

[2] Bazemore would have the Court take judicial notice of Local 1475 attorney's (Charles Herman) December 2, 2022 "*Position Statement*" where by its very own admittance concedes that Bazemore's *Charge* was actually filed with the EEOC on August 13, 2022: "This letter constitutes ILA Local1475's *Position Statement* in response to the *Charge of Discrimination* ("*Charge*") filed by Shannon Bazemore on

## STANDARD OF REVIEW[3]

Without agreeing or accepting the Court's standard of review as valid reasons to support dismissal, and for the further sake of brevity, Bazemore adopts said standards and contends to have presented enough direct, probative and circumstantial evidence to establish a prima facie case and shoulder any onerous burdens or procedural hurdles within those standards. Plaintiff also contends that she has established and raised a plethora of reasonable inferences of segregation and discrimination to suggest intentional race to have survived dismissal.

Under the standards of law surrounding this case, Bazemore contends the Court committed clear error when issuing its Order of dismissal when the record is replete with the requisite showings through direct, circumstantial and probative evidence establishing truthful factual matter for this case to proceed before a jury trial to decide whether race was the integral part for Bazemore not being promoted and discriminated against.  In short, evidence that is likely to be probative is "evidence that demonstrates, among other things: 1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, 2) systematically better treatment of similarly situated employees, and 3) pretext." *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022).

Cumulatively, when considering record evidence as a whole and taking Bazemore's facts as true, the suspicious timing of the unconstitutional waivers, creation of the prejudicially biased

---

August 13, 2022." (See Exhibit 1, p.1 at ¶2). Judicial notice shall be taken in light of this record established fact—a fact which cannot be reasonably disputed, in that, said date is generally known by all and to which can be readily and accurately determined from sources (EEOC, Attorney Herman as well as the *Charge* itself (Doc. 14-4)) whose accuracy cannot be reasonably questioned.

[3] At first blush, it appears as if the Court is holding Bazemore to higher standard of proof (beyond a reasonable doubt), rather than that of the appropriate standard, by a preponderance of the evidence.

MOU to disadvantageously make one-sided revisions which entailed Defendant making grave exceptions to Seniority Plan to outright exclude Bazemore from being promoted to AA seniority class along with other similarly situated employees **after** Bazemore laboriously worked during pandemic to earn 700 hours is discrimination towards Bazemore.[4]  The ambiguous statements of Local 1475's intent to create a plan that would merge predominantly white DND employees with white CNC employees to exclude Bazemore (a CNC) from so being included.in this promotional merge.

To make discriminatory matters worse, Local 1475 who would then allow these groups of predominantly white DND members to take on the unthinkable "reserved seniority" to precede Bazemore from BB-GG is illegal discrimination thus making Defendant's discriminatory intent more apparent.  Other evidence presented was Gunby's group text which preponderantly and suggestively carries with it, the intent to racially discriminate against the "15-20 zzz's" (22 blacks of total 110 zzz employees) which Local 1475 condoned and tolerated.

After having made 700 hours during CY 2020-2021, this is when Local 1475 made its revisions to Seniority Plan to subsequently tell Bazemore on March 3, 2022 that she will not be getting AA seniority based upon the fact she was hired from a segregated "Emergency List." This is discrimination in every sense of the word.  It is also worthy to note, Gunby and all other members who were preferentially awarded AA seniority along with Bazemore all did/performed the same jobs and to whom were all similarly situated, in that, they were all **casuals** who made 700 hours (**for the very first time together**) during 2020-2021 contract year.  In light of these facts, for Defendant to make exceptions and exclude Bazemore from being promoted, amongst

---

[4] With respect to Bazemore working through the great inflation period of the pandemic, and having been out of work a time or two after contracting COVID, it behooves Bazemore that was not afforded any compensation stemming from the $70,000,000 dollars of COVID relief fund which was accepted by Local 1475 during pandemic.

the many other factual matters, all established pretexts explicitly holds Local 1475 being liable for the many misconduct(s) alleged, thus entitling Bazemore to retroactive AA seniority.

Surely, Bazemore has established a prima facie to have survived dismissal, and upon being asked the one main question of whether Plaintiff presented a sufficient evidentiary basis for a jury to find that the defendant intentionally discriminated against plaintiff, the facts and inferences point so overwhelmingly in favor of Plaintiff Bazemore that no other reasonable people would garner a different result. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004).

## DISCUSSION

The standard of review to be applied stems from the most recent circuit precedent of *Tynes v. Fla. Dept. of Juvenile Justice*, 88 F.4[th] 939 (11th Cir. 2023) wherein the Court opined that a plaintiff who cannot satisfy *McDonnell Douglas* method by which the plaintiff can prove discrimination via circumstantial evidence, may still be able to prove her case by a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *See Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019)(*Lewis II*).

A "convincing mosaic" of circumstantial evidence is simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action—the ultimate inquiry in a discrimination lawsuit. *Jenkins v. Nell*, 26 F.4[th] 1250 (11th Cir. 2022). Proving her case through this convincing mosaic standard, Plaintiff was free to point to any relevant and admissible evidence "no matter its form, so long the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment/dismissal is improper. *Smith v. Lockheed-Martin Corp*, 644 F.3d 1321, 1328 (11th Cir. 2011).

Federal Rule 59(e) is a motion to alter or amend judgment which must be filed within 28 days after the judgment in order to toll time for filing an appeal. Reconsideration is only proper if the moving party has demonstrated that: 1) there has been an intervening change in the law, 2) new evidence has been discovered that was not previously available to the parties at the time the original order was entered or 3) reconsideration is necessary to correct a clear error of law or prevent manifest injustice. *See e.g. McCoy v. Macon Water Auth.*, 966 F.Supp. 1209, 1222-23 (M.D. Ga. 1997).

Bazemore so relies on bullets 1 and 3 above. That being said, because the Court appears to be holding to a higher standard of review, *Tynes* is the intervening change in law that has declared a different method by which Bazemore can/have proved her case, through a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. Id. Based upon the reasoning in *Tynes*, the Court's order rest upon clear errors of law and is due to be reconsidered in order to prevent a manifest injustice from persisting.

Fed.R.Civ.P. Rule 60(b) provides: On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order ... for: 1) mistake, inadvertence ..; 4) the judgment is void; ... or 6) any other reason justifying relief from the operation of the judgment. Under provision one, Bazemore's motion is timely where it is being filed within one year of the Court's Order. Being that the Court's order is in error due to mistakes and mere inadvertences regarding the facts and law (*Tynes*) surrounding this case, the Court should relieve Bazemore of the adverse judgment.

The Court's judgment is void under provision four, where it was issued in violation of Bazemore's rights to due process of law, in light of *Tynes* which provides a different method by

which the Court is to adjudicate Plaintiff's case. With respect to provision six, the exceptional circumstances and profound reasons exist which warrants and justifies relief from the operation of the Court's judgment via *Tynes*

I.      **Judicial Notice (Doc. 14.)**

In relation to the Court's persistence of Plaintiff's failure to oppose the Defendant's Motion to Take Judicial Notice of: 1) the Seniority Plan; 2) the 2021 MOU; 3) the 2023 Addendum; and 4) Bazemore's EEOC Charge (Doc. 24, p.8), Bazemore reiterates her maintained position that there was absolutely no need to oppose Local 1475's Motion to Take Judicial Notice. Reason being, all of said documents and its one-sided intentions to discriminate against Bazemore, for whatever biased or incomprehensible reasons, are what amply supports Bazemore's facts, allegations, inferences, direct and establishment of circumstantial evidence to make the prima facie showings regarding her claim(s) of how said documents discriminates against, treats Bazemore different than other similarly situated white employees, intentional discrimination or otherwise.

Once again, and contrary to the Court's position, Bazemore initially contended and continues to contend that the contents of what Local 1475 asks the Court to judicially notice were reasonably disputed. In one such example of previously disputing, Plaintiff contested how various revisions of the MOU is prejudicially discriminatory and unfair to Plaintiff in all respects (no quid pro quo). This fact is further buttressed by the fact, Defendant strategically designed MOU with the intent to revise the Seniority Plan to ultimately exclude Bazemore in every which way—ultimately making exceptions to unfairly say, even though, Bazemore made at least 700 hours

alongside Gunby and other preferentially awarded AA recipients during CY 2020-2021, she will not be getting AA seniority; instead, she will be getting HH.

The MOU goes on to note, however, now that we have placed the majority of white employees/members in front of Bazemore, from this day forward any employee who earns at least 700 hours will take on the next/respective seniority class. (See Doc.14-2, but not limited to paragraphs 2, 3, 5, 19 and 20 showing some of Local 1475's intent to discriminatory exclude Bazemore from being promoted to the AA seniority class).

Hence, this form of discrimination intentional excludes and makes exceptions when it comes to Bazemore, that the Due Process Clause embodied within the United States Constitution entitles to Plaintiff to retroactive application of AA seniority, not the henceforth application of HH1 seniority class. Yet and still, had it not been for the last minute revisions to Seniority Plan via 2021 MOU, unconstitutional waivers, seeking to devise a plot to merge white DND and white CNC list into one list that did not include Bazemore … Bazemore would have also been promoted to AA seniority class on March 8, 2022.

## II.    Bazemore Timely Exhausted Administrative Remedies

To more fully develop the record on this exhaustion requirement and lay to rest an inkling of a thought that Bazemore failed to timely exhaust remedies, Bazemore tenders the following facts: 1) Bazemore's claim primarily rest upon the fact that she was discriminated against once the MOU came from its embryonic stage (10/1/21) to the future material date it was conceived to prejudicially aggrieve Bazemore (**3/8/22**); 2) Jimmy Gunby's group text occurred, presumably on or about September 2021, to which Bazemore did not come in contact with until the latter month of January 2022, thus prompting Bazemore to launch a Grievance with Local 1475 on February 4, 2022; 3) Gunby's group text which was geared towards racially discriminating against

approximately 20 black ZZZ class employees (**22** to be more exact), a text which also rested upon the thought of a future day in time (**March 8, 2022**), the day Gunby and other predominantly white employees would be favorably awarded with AA seniority); 4) even though, the MOU and Gunby's text preceded the date Bazemore was actually aggrieved, the March 8, 2022 is the date upon which Bazemore's claim primarily rest (the actual date Local 1475 discriminated against Plaintiff when failing to promote her to the AA seniority class she was entitled); 5) the Supreme Court seconds and is in agreement with Bazemore's position, namely, the limitations period commences when the act occurred (March 8, 2022); (*see Morgan*, where Supreme Court reasoned that "discrete acts of discrimination" such as " . . . failure to promote …" are  easy to identity and each "constitutes a separate actionable 'unlawful employment practice.'" Id. at 115, 122 S.Ct. at 2073). Because each act is an identifiable violation of Title VII, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Id. at 2072. In such case, there is not issue about when, in the language of the statue, the "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). It "occurred" on the day that it "happened." *Morgan*, 536 U.S. at 109, 122 S.Ct, at 2270.; 6) from the material date asserted, Bazemore had 180 days in which to timely file a *Charge* with the EEOC, and it suffices to explain, Bazemore actually filed her *Charge* with the EEOC on **August 13, 2022**—well within the 180 day statute; and 7) Plaintiff misstated a date asserted in her *Complaint* wrongfully alleging that she filed her *Charge* with the EEOC on September 1, 2022, when record evidence conclusively shows what Plaintiff launched on said date, an "amendment" to her already filed *Charge* of **August 13, 2022**.  This is a fact that cannot be reasonably disputed (cf. attached Exhibit 1, Local 1475 averring Bazemore's *Charge* was filed with the EEOC on August 13, 2022 requiring Court to, *sua sponte*, take judicial notice).

### III.    Bazemore Plead a Claim of Discrimination, Race and Intentional Discrimination

Title VII of the Civil Rights Act of 1964 outlaws employment discrimination because of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Likewise, 42 U.S.C. § 1981 prohibits employers from intentionally discriminating on the basis of race in employment contracts. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975); *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999).  To prove a claim under either statute, a plaintiff can use direct evidence, circumstantial evidence, or both. *See Jenkins*, 26 F.4th at 1249.

Based upon the overkill of direct, factual and circumstantial and background continual evidence, Supreme Court precedent and conclusive record facts of plausible inferences, Bazemore has not only established a prima facie case of discrimination to suggest intentional race discrimination.  Plaintiff has plead colorable claims of Local 1475 creating a hostile work environment and provided comparator evidence to further shoulder her burden; thereby, presenting enough factual matter to establish Local 1475's adverse employment actions towards Bazemore was outright illegal discrimination.[5] Surely, the Court's Order is in grave error, it

---

[5] As further comparator evidence, there were approximately 30 employees/members which Local 1475 preferentially awarded AA seniority classification. To name a few of the many white employees/members, from Local 1475's work board, displaying individuals names along with their seniority statuses of AA seniority entails: Jimmy Gunby, Al Henderson, Robert Hook, Robert Renfro, Matt Brawner, Susan Graves, Vincent Hogan, Michael Wilson, Troy Sexton, Travis Sexton, Christopher Herrington, John McMahon, Wade Youmans, Bryan Gray, Jimmy Henderson, Bridget Kitchens, Jobeth Buttimer, Gerald Missroon … And to name a few of the those Deck and Dock employees/members who never made 700 hours as a Checker and Clerk, yet, who has been preferentially/favorably awarded the incomprehensible "reserved seniority" status of **BB** seniority over Bazemore: David Frizzell, Kenneth Rahn, Stephen Cowart, James Lucus, Christopher Utley, Jason Hornsby, Elliott Phillips … We lastly have one employee/member who has been preferentially/favorably awarded "reserved seniority" status of **CC** over Bazemore (Oltman), when Bazemore herself was entitled to **AA** seniority status along with Gunby and the other white employees/members who Local 1475 allowed to advance, yet, hindered Bazemore and made grave exceptions so as to discriminate against and unfairly exclude Bazemore from advancing by way of unfair employment practices by implementing waivers, disadvantageously revising the MOU and Seniority Plan to Bazemore's detriment.

should be vacated in light of *Tynes* and this case deserves to proceed to trial before an impartial administrator of justice.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to h[er] compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "To state a race-discrimination claim under Title VII, a complaint need only 'provide enough factual matter (taken as true) to suggest intentional race discrimination.'" *Surtain v. Hamlin Terrace Found*, 789 F.3d 1239, 1246 (11th Cir. 2015)(quoting *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 (11th Cir. 2008)).

To set the record straight, once and for all, intentional race discrimination can be gleaned from a slew of the facts presented. Such factual matter that can be taken as true coupled with inferably showing how Local 1475's intent was discriminatory towards Bazemore, reasonable people would agree and imply that Local 1475's intent could not have been based on anything other than race when making exceptions and exclusions, *inter alia*, so as to hinder Bazemore from being promoted or advancing to AA seniority.

In fact and truth, Local 1475 in its perfect strategic timing and planning: 1) revised the MOU to make unfair changes from Bazemore being one who would receive seniority once she makes 700 hours to making exceptions to exclude Bazemore from obtaining AA seniority once she accumulated 700 work hours during 2020-2021 contract year; 2) Local 1475 sought to discredit all of Bazemore's hours once she already made them to say by way of an unconstitutional waiver that under no circumstances would Bazemore ever be given seniority more the less AA seniority she is entitled—the waiver appears to have been abrogated; 3) Local 1475's intent to devise a plan as to how Defendant could create and be able to merge predominantly white DND

13

employees and predominantly white CNC employees list into one list (thus excluding Bazemore from being included all together); 4) how Local 1475 wanted to show Gunby and others who were awarded AA seniority that Bazemore will not be joined in their seniority class; 5) how Local 1475 has and will continue to give the predominantly white DND employees/members **"reserved seniority status"** to precede Bazemore in seniority and lodge Plaintiff at the far back end of the bus of seniority classes; 6) Defendant's unfair employment actions adamantly declares in support of Gunby's group text, that Bazemore will not obtain AA seniority alongside Gunby, nor will Bazemore be permitted to go to work prior to predominantly white DND employees, bearing in mind, they too were coming on as new CNC who did not make at least 700 hours as a CNC in order to precede Bazemore in seniority as a CNC; and 7) how after Local 1475 put unfair employment practice into play and placed all of the predominantly white employees/members in front of Bazemore in seniority, that Local 1475 would come back two years later to say, Local 1475 will now give Bazemore seniority and place her at the very back of Local 1475 discriminatorily intended seniority class and prejudicially peg Plaintiff in HH1 seniority class.

Unquestionably, Bazemore has shouldered her burden of establishing a prima facie case, thus proving and presenting enough evidence and factual matter for reasonable people to conclude based upon facts and law that Local 1475 intentionally discriminated against Bazemore to plausibly imply that race appears to have been the determining factor and intent of why Local 1475 did every imaginable and unlawful tactic to prevent Bazemore (a black bargaining unit employee/member who was hired on with Local 1475 in September 2020) and 21 other black

employees from reaping the employment benefits of being promoted to the AA seniority class they were justly entitled .[6]

With respect to, but contrary to the Court's erroneous assertion that Bazemore's claims boil down to her dissatisfaction with her seniority status, Bazemore's claims rest primarily upon the unfair employment practices of Local 1475 discriminating against Bazemore and depriving her from obtaining the AA seniority status she was entitled to in 2020-2021, as opposed to Local 1475 giving Bazemore the prejudicially unfair seniority class of HH1 after being compelled (unlike any other employee like Gunby, etc.) to make at least 700 hours for two consecutive years to receive.

Reasonable jurist would not hesitate to first question, then render Local 1475's discriminatory intent, along with Defendant condoning and tolerating its employees to (racially) discriminate against employees/members, appears on its face to have been about race not wanting to promote Bazemore to AA seniority when she was entitled, but placed Bazemore at the back of the bus to have groups and groups of predominantly whites employees/members to precede Bazemore in seniority classes from BB-GG, and more importantly, so as to hinder Bazemore from

---

[6] Contrary to the Court's finding that Bazemore claims she was deserving of AA seniority, it is Bazemore's contention and maintained position that she was entitled to the promotional privilege of being promoted to AA seniority—not only did Gunby know that Bazemore would have been in their category (via former Seniority Plan prior to being revised and after employees became aware that Bazemore made at least 700 hours during CY of 2020-2021—but, Local 1475 knew this fact as well which is why: 1) Local 1475 concocted the unconstitutional illegal waiver seeking to discredit Bazemore's hours after they were already made; 2) came forth with discriminatory revisions to the MOU and Seniority Plan to exclude and make exceptions to Bazemore receiving her just and rightful AA seniority on March 8, 2022; 3) after having did all that was unjustly did to Bazemore to deprive her of AA seniority at the time she was entitled, Local 1475 would have it to say from this day forward 2022-2023 forward anyone who accumulates 700 hours would obtain the appropriate seniority; and 4) in this hypothetical question of a plausible inference be drawn in favor of Plaintiff: **Had Local 1475 not made the revisions to the MOU and Seniority Plan, and sought to discredit Bazemore's already accumulated 700 hours during 2020-2021 contract year, would Bazemore have obtained AA seniority? The answer to this question before a jury would be nothing less than YES, Bazemore would have also been promoted to AA seniority classification!** Surely, there was more than enough plausible factual matter (taken as true) to suggest intentional race discrimination to overwhelmingly point in favor of the Plaintiff .

being allowed to be dispatched for work before all the predominantly white CNC and DND employees/members. Such unfair and discriminatory practices cannot be deemed fair and just as Local 1475 has blatantly applied to Bazemore, as a black bargaining unit member, respectively.

Bazemore respectfully submits to have proven enough facts and evidence to establish, discrimination, intentional discrimination, hostile work environment and race discrimination.[7] In stark contrast to the Court's erroneous findings, the Court has apparently went to the far extreme to bolster Gunby's credibility when giving its personal interpretation for Gunby's intent to racially discriminate against Bazemore and 21 other black ZZZ employees (of the total 110 ZZZ employees). The Court committed clear error when doing so, in that, Gunby himself was never sworn under oath to testify before the Court or jury, nor did Gunby gave a deposition attesting to that which the Court gives its accounts on Gunby's behalf.

Looking at these matters from a pretext point of view, evidence has been presented and proven from which a reasonable fact finder could find, by a preponderance of the evidence, that there was a causal link between Local 1475's adverse actions and Plaintiff's protected personal characteristic. Based upon the evidence presented, it can believed by reasonable people under a preponderance of evidence, that the existence of a fact in issue is/can/has been proven with/without any inference or presumption. Cf. *Tynes*. Having said all of this and that, a jury could reasonably infer from all the direct, factual and circumstantial evidence, combined with other plausible inferences, that Gunby sought to racially discriminate against Bazemore and that

---

[7] From the outset, Bazemore continually argued that race became an issue when Gunby's (racially implied discriminatory group text geared towards Bazemore and 21 other black employees/members. It bears to reason, Local 1475 previously stated that Bazemore failed to show that Gunby was an agent, officer or one who possessed decision making authority. Plaintiff then directed this Court's attention to Local 1475's adopted Policy on Discrimination which states in no uncertain terms that discrimination on any level by its officers, agents, attorney, employees and members will not be tolerated or condoned. Local 1475 did totally the opposite. Defendant not only condoned and tolerated it, they help bring it into existence.

Local 1475 condoned, tolerated and did everything unlawful to make Gunby's intent come to fruition; that is, Local 1475 under no circumstances would allow Bazemore to be promoted to her then entitled to AA seniority class along with Gunby and other members who were preferentially awarded AA seniority; Defendant created a waiver to discredit all of Bazemore's hours after having already earned them; Local 1475 cleverly played a segregated list game to hinder Bazemore's advancement to AA seniority; and where Local 1475 revised **former** Seniority Plan which **included Bazemore to receive seniority,** but in Local 1475 prejudicial revisement of said Plan, its **intent** was designed to deprive and hinder Bazemore from being promoted to AA seniority on March 8, 2022 along with Gunby and others.

For such unfair discriminatory employment practices, Bazemore shall be made whole and awarded the retroactive AA seniority status she was entitled as her employment privilege. Had Local 1475 not made all the disadvantageous revisions, etc., Bazemore would not now have all the predominantly groups of white DND and CNC employees to precede her in seniority classes AA-GG, while she waits in unconstitutional HH1 class until all other seniority classes from BB-GG are filled to whatever capacity Local 1475 so decides.

In opposition to the Court's position, and as the record amply establishes, although, Gunby was not named as a party to this action, it is beyond speculation that Gunby's group text intentionally referenced the approximate 22 black ZZZ employees of the entire group of 110 ZZZ employees. Accordingly, Gunby may or may not have been acting on behalf of the union sent his group text to other white employees/members; yet, Gunby's intent to discriminate against any employee is condemned in any other workplace, with the exception of Local 1475.

Nonetheless, it would be gleaned by reasonable people, by way of a preponderance of evidence, that Gunby's group text when referring to the 15-20 zzz employees, that Gunby was

cleverly referencing the actual 22 employees/members who just so happens to be black. Based upon these set of facts, everything in and about Gunby's group text was secretly geared towards the race of Bazemore which Local 1475 condoned and tolerated, and even after it was brought to the attention of Local 1475, by way of the conceded *Grievance* filed with and received by Defendant through an email on February 4, 2022—Local 1475 did absolutely to rectify this obvious/discriminatory wrong, in direct contravention to Defendant's adopted Policy on discrimination.

It suffices to further explain, and respectfully submit, that the Court committed clear error when making a grave attempt to bolster Gunby's credibility and then gave its interpretations of what Gunby's intentions were when Gunby himself was never sworn in, provided a deposition or testified under oath as to what actual intent of his group text entailed. It is fact, Gunby's text first mentioned "all zzz's that makes their hours will be in their category."

Notably, Gunby's group text did mention the total **110 zzz employees**; instead, Gunby's text continued with: "[B]y my estimation we are looking at **15-20 of them (blacks) making it if we don't block them** a little better than we have been ... it will make a big difference for us next year if we can limit how many **(blacks)** get in with us ... the difference in maybe **5-10** of the **(15-20 black) ZZZ's** not making it." (Emphasis added in parenthesis and bold).

Simply put, Bazemore's claims are not based upon mere sophistry, but rather, it is based upon truthful factual matters to suggest intentional race discrimination—discrimination that Local 1475 not only furthered to see it come to pass, but Local 1475 did every within its unfair powers and illegal tactics to help make Gunby's group text become a reality; that is, Plaintiff Bazemore not get AA seniority and be in their category. To such, an extra big thanks goes out to Local 1475's intent to make create a discriminatory and one-sided MOU to revise the former Seniority

Plan and have the current Seniority Plan exclude Bazemore from being promoted to AA seniority on March 8, 2022, to have Bazemore unfairly pegged in the unjust seniority class of HH1.

In sum, Bazemore has indeed provided this Honorable Court with an ample amount of truthful and factual matter that would not only  give rise to a claim of discrimination, but what Plaintiff has provided was an overkill to **suggest** intentional race discrimination beyond speculation.  Hence, Bazemore has surmounted all hurdles: 1) that she belonged to a protected class which Local 1475 separated by way of **segregated list when they (Gunby, Bazemore, etc.) were all casuals who made at least 700 hours together for the very first time during CY 2020-2021**; 2) that she was the subject to an adverse and unfair employment action after Local 1475 did every unlawful practice to revise Seniority Plan by way of MOU which gave groups of predominantly white employees AA seniority on March 8, 2022, but deprived Bazemore of obtaining that same AA status she was also entitled; 3)  that she was qualified to and did adequately perform the job duties in question to obtain at least 700 hours, but to whom had the rules changed on her watch to require Bazemore (unlike Gunby, DND and all other white employees who were given favorable seniority treatment) to make at least 700 hours for several consecutive years before being promoted to HH1 seniority class.

It further bears to mention, there is no question that the judicially noticed documents, and even Gunby's group text, did not conspicuously use the terms such as blacks, race, n-word, etc., Bazemore interjects that the use of such term would have been too much like right.  In missing the target, however, the Court concludes its Order on the note of Bazemore's Complaint not

alleging that any African American present on the Emergency List were treated any differently than others on the Emergency List.[8]

## CONCLUSION

Wherefore, premises considered, Bazemore has forthrightly established that her Complaint was timely, in that, she exhausted remedies with the EEOC well within the 180 day statutory period, and Bazemore has provided more than enough sufficient factual matters (taken as true) to suggest intentional race discrimination to support her claim(s) under Title VII. As such, it behooves Bazemore to say, her claims are not emotionally based upon her being unhappy with her current status of HH1 seniority status, or the one-sided and biased seniority system which is discriminatory drafted to benefit predominantly white employees who are allowed to precede

---

[8] The Emergency List, like any other list employees were segregated Local 1475 as a strategic linchpin to prevent Bazemore from being promoted to AA class. The Z-1, Z-2, Z-3, Z-4, Emergency List, etc., were in all factual actuality **casuals** because they were employees who have yet to make 700 hours in a previous service year (from October 1st – September 30th). At any rate, once an employee is hired on and/or had a break in employment, said employees are starting from ground zero. That being said, once any employee/member after being hired on makes at least 700 hours and maintains them in each consecutive year, that employee/member will be entitled to next promotional seniority alphabet, in this case AA seniority. To prevent Bazemore from advancing, Local 1475 revised the MOU to Bazemore's detriment. Had Local 1475 not did so, Bazemore would have been promoted to AA class. As Local 1475, Gunby and other members/employees knew from then former Seniority Plan which would have entitled Bazemore to AA seniority and have Bazemore placed in Gunby's, et. al., AA class, since Bazemore made at least 700 hours along with Gunby and others during service contract year of 2020-2021, respectively. This is what Local 1475 changed to hinder Bazemore's advancement to AA class. As such, all of those who were similarly situated (**the 26 Gunby alleged were in his class, and other classes and the 110 of Bazemore's class**). That being said, the only employees/members who benefitted from the one-sided system of a Seniority Plan were the white employees. There was no quid pro quo for Bazemore, Bazemore had to make 700 hours for two consecutive service years to settle for HH1 class when she was entitled to AA class; Bazemore's already earned hours were discredited after they were already earned at the thought of an unconstitutional waiver, thus entitling her to retroactive AA seniority; exceptions and exclusions were intentionally made to hinder Bazemore's advancement to AA seniority; Bazemore was hired on, trained and was entitled to the same promotion of AA seniority as Gunby and others and she made 700 hours, but due to Local 1475 discriminatory practices, Bazemore was denied being promoted based upon, *inter alia*, unconstitutional segregated list. Although the Checkers and Clerks Agreement states at paragraph 13 that: Seniority is determined locally, it is Bazemore's maintained position and contention that the Seniority Plan must be drafted in a non-discriminatory manner to outright exclude and make grave exceptions to discriminate against Bazemore so as to prevent her from being promoted to AA class.

Plaintiff in seniority from AA, and BB-GG--with Local 1475 placing Bazemore in the less fortunate HH1 class, who is black, reasonable people would be drawn to a different conclusion that Local, Seniority Plan/system and how all the predominantly white employees/members were preferentially classified  was racially motivated, in that, it favors white employees, but suppresses and discriminates against Bazemore, who is black.  The Court's Order (Doc. 24) shall be vacated in the interest of justice and fair procedures.


Respectfully submitted,


Shannon Bazemore, pro se

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I have served on a true and correct copy of the foregoing Fed.R.Civ.P. Rule 59(e) and Rule 60(b) Motion by placing the same in a properly addressed envelope with First Class postage prepaid by U.S. Mail to ensure service upon the Attorney for the Defendant (ILA Local 1475) at:

**CHARLES HERMAN LAW**
Charles Herman
2 East Bryan Street, 4th Floor
Savannah, Georgia  31401

So said and done, this 19th day of September, 2024.

Shannon Bazemore, pro se

8 Saint Charles Drive
Guyton, Georgia  31312
(912) 323-4672
shannonbmore@icloud.com

# E X H I B I T   1

# CHARLES HERMAN LAW

CharlesHermanLaw.com

**Charles Herman**
Charles@CharlesHermanLaw.com

December 2, 2022

***VIA EEOC PORTAL***

U.S. Equal Employment Opportunity Commission
Savannah Local Office
7391 Hodgson Memorial Drive, Suite 200
Savannah, GA 31406

Re:    Shannon Bazemore v. ILA Local 1475;
Charge No. 415-2022-01341

Dear Investigator(s):

Please be advised that the undersigned is the legal representative for International Longshoremen's Association, Local 1475 (hereinafter "ILA Local 1475" or "Local"), Respondent in the above-referenced *Charge*. ILA Local 1475 is an incorporated not for profit labor organization representing clerks and checkers ("CNC") and deck and dockmen ("DND") in the Port of Savannah. ILA Local 1475 is a local union of the International Longshoremen's Association and is within and under the South Atlantic and Gulf Coast District of the International Longshoremen's association (the "District"). ILA Local 1475 is firmly committed to equal employment opportunity for all employees without regard to race (or any other protected class). ILA Local 1475's *Policy Against Harassment, Discrimination and Retaliation* is set forth in its CBA and is made available to bargaining unit members on the Local's public website. See https://ila1475.com/documents.

This letter constitutes ILA Local 1475's *Position Statement* in response to the *Charge of Discrimination* ("*Charge*") filed by Shannon Bazemore on August 13, 2022. This *Position Statement* is made without waiving any objections that ILA Local 1475 may have, including lack of jurisdiction, both procedural and substantive, over some or all of the allegations that Mrs. Bazemore has made. ILA Local 1475 is providing information in response to Mrs. Bazemore's allegations solely in cooperation with the Commission's efforts toward an informal resolution of this matter. This information is provided with the express understanding and belief that, while the information may be used in the investigation, it is subject to the confidentiality provisions of Section 706(b) of Title VII of the Civil Rights Act of 1964 ("Title VII"). Accordingly, other than for review and use by the Commission as part of its endeavor to resolve the instant *Charge*, the information may not be used without the express written consent of ILA Local 1475.

## I.    INTRODUCTION

In her *Charge*, Mrs. Bazemore claims that she was discriminated against because of her race in violation of Title VII. The gravamen of Mrs. Bazemore's *Charge* is that: (1) "*[i]n or around September 2021 the union made me, and other sign waivers stating the hours would not count towards advancement to the next seniority level*" and that "*new policy was implemented to place myself and others denied advancement into a less desirable category as well as extending the hour requirement needed for advancement.*" Mrs. Bazemore claims that these decisions were racially motivated and discriminatory. There is no evidence to support any of Mrs. Bazemore's claims.

## II.    POSITION STATEMENT

### a.    Mrs. Bazemore' Relationship with ILA Local 1475.

ILA Local 1475 dispatches bargaining unit members to the Port Employers under the terms of a *Collective Bargaining Agreement* ("CBA") between the Georgia Stevedore Association  who represents the Port Employers in collective bargaining ("GSA") and ILA Local 1475. ILA Local 1475 employs a staff of dispatchers and the jobs are dispatched to users of the hiring system who are required to utilize a web-based hiring system where all bargaining unit members can view who is being referred to work. ILA Local 1475's hiring hall, like most hiring halls, are governed by seniority plans which govern the hiring preferences who have qualified for seniority status under the respective seniority plans. Additionally, there are individuals who have obtained "extra" status over the years. In addition to the seniority plans, the Local maintains hiring hall rules for seniority personnel as well as rules for the hiring of extras.

Mrs. Bazemore claims in her *Charge* that she began her membership with the Local on or about November 2020 and that she is a member in good standing. However, Mrs. Bazemore's membership status in ILA Local 1475 is irrelevant to this investigation, as the EEOC has no jurisdiction to investigate issues that could be related to her membership status in the labor organization, which is exclusively under the province of the National Labor Relations Board ("NLRB"). Insofar as the issue is relevant, it is undisputed that Mrs. Bazemore is a bargaining unit member represented by ILA Local 1475 and dispatched through ILA Local 1475's hiring hall.

### b.    Creation of the Emergency Lists, Waiver, and MOU.

Mrs. Bazemore was first dispatched out of the Local's hiring hall after signing a waiver and as part of an Emergency List. Some background is necessary for the Commission to understand the circumstances surrounding the creation of the Emergency List, the waiver, and the circumstances leading to the bargaining parties (GSA, the District, and the Local) executing the October 11, 2021, Memorandum of Understanding ("MOU"), which is the "*new policy*" that Mrs. Bazemore references in her *Charge*, when she states that "a new policy was implemented to place myself and others denied advancement into a less desirable category as well as extending the hour requirement needed for advancement." As shown herein, all of these actions were taken for legitimate non-discriminatory reasons and in furtherance of the Local's duty of fair representation to all of the bargaining unit members it represents in its capacity as a labor organization.

### i.  Creation of the Emergency List.

Beginning in February 2021 (*and before*), the Local had an unprecedented amount of work and was struggling to fill the Port Employer's job requests from the Local's existing users of the hiring hall. At that point, the Local needed to expand the workforce, but could not formally create a new Extra List until it received permission from the ILA, which was in the process of reviewing the Local's seniority system, in order to create a mechanism to formally merge the CNC and DND groups. In order to fill the short-term need for additional workers until the ILA completed the integration of the two groups, the jobs had to be filled under the CBA. ILA Local 1475 utilized a process known as a "street list" or emergency list ("Emergency List"), which had been utilized by the Local previously and which opened up the jobs to the public, as long as the personnel met the requirements (i.e., TWIC card, etc.). As a result, an Emergency List was created. Mrs. Bazemore was on the Emergency List and worked after all seniority and Extra List personnel were called.

### ii.  Waiver Requirement.

*All workers who were placed on the Emergency List*, including Mrs. Bazemore, were required to execute a waiver explicitly stating that referrals off the street list do not "guarantee future employment or credit towards seniority." The waiver was jointly drafted by Local 1475 and GSA, the signatories to the CBA. The waiver was clear that Emergency List personnel would not receive any advantage by virtue of any temporary work performed regarding any future created list(s) or future employment. This waiver demonstrates that the intent of the Emergency List was to meet an immediate, emergent need for additional workers, as opposed to creating a new preferential referral classification. The Local's use of the waiver is consistent with its practice of operating a transparent referral system, which is operated in a completely non-discriminatory manner.

### iii.  Execution of the *October 11, 2021, MOU.*

At the outset it should be mentioned that prior to the MOU, the CNC and DND job classifications were subject to separate seniority plans. The DND group of workers were previously non-union direct employees of the Port employers; were organized by the ILA; and through a representative election were granted representation through a NLRB hearing in 2014. The initial document governing the DND workers conditions of employment was negotiated with the GSA in 2014 and treated the DND workers separately from the CNC workers. Thereafter, the DND workers were able to negotiate their own separate seniority plan. From at least 2014, the separation of the CNC and DND groups for seniority purposes has caused much controversy within the Local.

In May 2021, there continued to be issues regarding the ongoing internal disputes involving the methods of integrating the CNC and DND workers into one unified seniority system. As part of that process, the President of the International ILA Union appointed a committee to investigate and to devise a proposal to resolve any problems. The International President reviewed the Committee's recommendations and authorized the Committee to negotiate with the employers to amend both seniority plans. That Committee met during the months of June through September, and considered the various issues related to the interrelation of the CNC and DND seniority systems, and when, how and if to merge them. Ultimately, the Committee agreed with the Port

Employers on the MOU addressing the issues. Notably, the MOU provided a mechanism for the DND workforce to be merged into the CNC list over a period year, both to provide the DND workers with the future ability to work as CNCs, as well as to protect the overall interest in assuring that there was a sufficient number of DNDs to fill the Port Employers staffing needs.

As a result of the delay, and through no fault of ILA Local 1475's, Emergency List personnel worked a significant number of hours. Although the waiver signed by all of the personnel who were referred and worked from the Emergency List was clear that Emergency List personnel would not receive seniority or any advantage by virtue of any temporary work performed regarding any future created list(s), the bargaining parties through the MOU created an Extra List 5 for Emergency List personnel who accumulated 700 hours during contract year 2020-21.

### c.  Mrs. Bazemore Cannot Show that She Was Subjected to Race Discrimination.

#### i.  The Waiver Requirement was Non-Discriminatory.

All workers who were placed on the Emergency List, regardless of race or any other protected category - including Mrs. Bazemore, were required to execute a waiver. Mrs. Bazemore tacitly acknowledges this fact when she states in her *Charge* that "*the union made me, **and other** sign waivers*". Mrs. Bazemore does not attempt to claim that the Local differentiated between who was required to sign a waiver using race as a factor. Such a claim would be demonstrably false.

#### ii.  The MOU Provided a Benefit to Emergency List Personnel.

Regarding the alleged "*new policy*", Mrs. Bazemore does not claim that the MOU was implemented to discriminate against her based on her race. As set forth above, there were many factors that went into the bargaining parties making the decision to enter into the MOU, none of which were related to race at all. Mrs. Bazemore's work records show that she did work over 700 hours of work in the 2021 contract year (October 1, 2020, to September 30, 2021). In fact, as part of the Emergency List Mrs. Bazemore worked 1,062 hours during the 2021 contract year.

Pursuant to the terms of the MOU, Mrs. Bazemore, along with every worker who made their 700 hours during that contract year from the Emergency List, were placed on Extra List 5, regardless of race, and worked ahead of others as a result of that preferential placement, despite the fact that the waiver was valid and despite the fact that there was no requirement that the hours that the Emergency List people worked receive any credit at all under the jointly negotiated MOU. As a result of the MOU, Mrs. Bazemore doubled the number of hours that she was able to work and worked 2,097.5 hours in the 2022 contract year. Clearly, the new policy benefited Mrs. Bazemore.

### d. Failure to Exhaust – Timeliness Requirement – 180 Days.

42 U.S.C. §2000e-5(e)(1), creates a requirement for filing charges with the EEOC of One Hundred Eighty (180) Days from the date of the alleged unlawful employment practice.[1] In regard to any allegation that the continuing violation theory is applicable, that only applies to the issue of whether the allegations fall within the scope of the *Charge*, not whether the timeliness requirement of 42 U.S.C. §2000e-5(e)(1) has been met.[2] In order to be considered by this Commission under Title VII, each alleged discrete act of discrimination must be administratively exhausted. Mrs. Bazemore appears to claim that two (2) discrete acts of intentional race discrimination.

*First*, Mrs. Bazemore claims that "*[i]n or around September 2021 the union made me, and other sign waivers stating the hours would not count towards advancement to the next seniority level*." However, as shown above, every worker that worked through the Emergency List signed a waiver regardless of race. The waiver was jointly drafted by Local 1475 and GSA, the signatories to the CBA. The waiver was clear that personnel would not receive any hours towards seniority.[3] Mrs. Bazemore signed her waiver on November 27, 2020, more than 180 days from *Charge* filing.

*Second*, Mrs. Bazemore claims that a "*new policy was implemented to place myself and others denied advancement into a less desirable category as well as extending the hour requirement needed for advancement*." However, the alleged policy is applicable to all without regard to race.

Mrs. Bazemore has not timely exhausted either act set forth above – one of which occurred November 27, 2020, and the other on October 11, 2021. Here, Mrs. Bazemore filed her *Charge* on August 13, 2022. Therefore, anything that occurred prior to February 14, 2022, is beyond the 180-day period of this *Charge*. At the earliest time Mrs. Bazemore alleges that ILA Local 1475 discriminated against her was on September 1, 2021. However, the only applicable time period relevant to this *Charge* is from February 14, 2022, through August 13, 2022.

---

[1] *EEOC v. Summer Classics, Inc.*, 471 Fed. Appx. 868, 870 (11th Cir. Ala. 2012).

[2] *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265 (11th 2002): The Eleventh Circuit has held that *National Railroad Passenger Corp. v. Morgan*, 536 U.S.101, should be read as implicitly requiring a plaintiff to file a new or amended EEOC charge for any discrete act that occurs following the original charge of discrimination.

[3] The text of the jointly drafted waiver is as follows: "I, _____ (PRINT NAME), acknowledge that I have been advised as follows: 1. ILA Local 1475 ("Local 1475") operates a hiring hall for the referral of workers to employer-members of the Georgia Stevedore Association ("GSA"). 2. Due to the existence of a situation where Local 1475 cannot supply sufficient labor to fill the available jobs from the established Local 1475-GSA hiring lists at this time, Local 1475 needs additional individuals to work on a temporary basis. 3. By accepting referrals from Local 1475 to fill such temporary hiring needs, I am in NO WAY guaranteed placement on any past, current, or future list as may be established by Local 1475 and GSA, and I will not receive any advantage by virtue of any temporary work I perform at this time when any future list(s) are created. 4. The creation of an ILA Port ID, ILA employee number, and receipt of Hazmat Training also DO NOT guarantee me a position on any future list(s) that are created. 5. Any hours worked prior to the creation of any future list(s) being established WILL NOT QUALIFY AS CREDITED HOURS toward SENIORITY under the CBA. I fully understand and acknowledge that ILA 1475 and the companies for which I accept a referral have no obligation to employ me, or to continue to employ me, in the future."

---

### III.    CONCLUSION.

As this position statement demonstrates, Mrs. Bazemore' allegations of race discrimination are completely without merit. Therefore, ILA Local 1475 respectfully requests that the Commission return a finding of no cause to believe that race discrimination occurred. I trust that this *Position Statement* provides you with all of the information needed to resolve this *Charge*. If you need anything further, please contact me at the above address.

Thank you for your attention to this matter.

Very Truly Yours,

Charles Herman