IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| SHANNON BAZEMORE, | |
| Plaintiff, | CIVIL ACTION NO.: 4:23-cv-372 |
| v. | |
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, ILA LOCAL 1475, | |
| Defendant. | |

**O R D E R**

*Pro se* Plaintiff Shannon Bazemore sued Defendant International Longshoreman's Association, ILA Local 1475, ("Local 1475"), alleging discrimination on the basis of her race. (Doc. 1.) On August 22, 2024, the Court dismissed Plaintiff's claims. (Doc. 24.) Presently before the Court is Plaintiff's Motion for Reconsideration, requesting the Court reverse its dismissal. (Doc. 26.) For the reasons below, the Court **DENIES** Plaintiff's Motion for Reconsideration. (Id.)

**BACKGROUND**

**I.   Factual Background**

Because the general factual background is largely the basis for Plaintiff's present Motion, the Court will restate that factual background in essentially the same way it was previously presented, (see doc. 24, pp. 2–6):

Local 1475 is a local labor organization that serves as the bargaining representative for clerks and checkers in the Port of Savannah, Georgia. (Doc. 1, p. 3.) Local 1475 employs/represents at least 150 bargaining unit members and is party to a collective bargaining agreement ("CBA") with the Georgia Stevedore Association. (Id. at p. 4.) Plaintiff, an African

American woman, works as a clerk and checker and is a bargaining unit member represented by Local 1475. (Id. at pp. 3, 5.)

Local 1475 operates a hiring hall where it assigns work to clerks and checkers in accordance with the order set forth in the CBA, referred to as the Savannah Clerks and Checkers Seniority Plan ("Seniority Plan"). (Id. at pp. 3–5; doc 14-1.)[1] Under the Seniority Plan, clerks and checkers are divided into "Classes." (See doc. 14-1.) Each Class consists of clerks and checkers who achieved at least 700 hours of work in a specific "contract year" and maintained 700 hours of work in each contract year thereafter. (Id. at p. 2.) Under the Seniority Plan, contract years begin on October 1, end the following year on September 30, and are designated by the two calendar years they straddle (e.g., 2023–24). (Id. at p. 4.) Before medical benefits, a pension plan, or seniority status can be acquired, a member must accumulate and maintain at least 700 work hours during a contract year. (Doc. 1, p. 6.)

Plaintiff was hired by Local 1475 to work as a clerk and checker in September 2020 as part of an "emergency street list" (the "Emergency List"). (Id.) During the 2020–21 contract year, Plaintiff obtained at least 700 work hours. (Id.) Plaintiff's seniority classification was "ZZZ" because of her presence on the Emergency List. (Id.) Class ZZZ contained 112 members: twenty-two African American workers and ninety white workers. (Id. at p. 9.) Plaintiff received communication from Local 1475 that, although she "performed the same job functions, worked through the pandemic, and accumulated 700 work hours during the contract year 2020–2021," she did not obtain "AA" seniority because she was hired from the Emergency List. (Id. at p. 6.)

---

[1] In its previous ruling, the Court granted Defendant's request that the Court take judicial notice of certain undisputed facts that were not alleged in Plaintiff's Complaint. (Doc. 24, pp. 8–9 (granting doc. 14).) In her present Motion, Plaintiff maintains that she has no opposition to this portion of the Court's prior Order. (Doc. 26, p. 9.)

In September 2021, Local 1475 required members on the Emergency List to sign a waiver of seniority rights, which stated that "[a]ny hours worked before the creation of any future list(s) being established will not qualify as credited hours toward seniority under the CBA."  (Id. at pp. 10–11; doc. 14-4, p. 2.)  Plaintiff herself did not sign this waiver, and another member of the Emergency List signed it for her.  (Doc. 1, p. 10 n.4.)

Local 1475 executed a Memorandum of Understanding on October 1, 2021 ("2021 MOU") to supplement the Seniority List.  (Doc. 14-2.)  The 2021 MOU put all workers on the Emergency List who had earned 700 hours in the 2020–21 contract year on "Extra List 5," effective October 1, 2021, which placed those workers in Class HH.  (Id. at p. 5.)  Workers who were on Extra Lists 1, 2, 3, or 4 (and thus not on the Emergency List) who had worked 700 hours in the 2020–21 contract year were eligible for Class AA seniority status.[2]  (Id. at pp. 2–3.)  The 2021 MOU did not mention race.  (See generally id.)

Before the end of contract year 2021–22, a white bargaining member, Jimmy Gunby, sent out a group text to other white bargaining members.  (Doc. 1, p. 8.)  The body of the text read in relevant part:

> "[H]ello everyone this is Jimmy Gunby[.]  This text is for information only please don't respond to this group text.  [Extra] List 5 will not go into effect until October 1st, which means all the ZZZ's that make their hours will be in our category . . . .  The total for our category is sitting at 26 without counting the ZZZ's that will make it.  By my estimation we are looking at 15–20 of them making it if we don't block them a little better than we have been. . . .  If you can please pick up at least 20 to 30 hours (2–3) shifts a week or more if you can.  This will make a big difference for us next year if we can limit how many get in with us.  Once again I did not send this for everyone to respond I'm just giving the information that I know and asking if you can block a few shifts a week it will make the difference in maybe 5–10 of the ZZZ's not making it."

---

[2] Plaintiff also alleges that, "in the eleventh hour[,]" Local 1475 "disadvantageously revise[d] the MOU." (Doc. 1, pp. 9–10.)  The Complaint does not clarify what was revised or how Plaintiff would have been classified before the alleged revision.  (Id.)

(Id.)

Plaintiff later lodged a racial discrimination grievance against Local 1475 and emailed it to various Local 1475 officials. (Id. at p. 7.) In response to the grievance, Plaintiff was made to participate in a video teleconference on March 3, 2022. (Id.) During the teleconference, it was communicated to Plaintiff that, although she would not receive AA seniority, those who worked on the Emergency List would be awarded HH seniority rights "sometime in the near future" to recognize the work they performed during the pandemic. (Id.) Plaintiff received HH seniority status at the end of the 2021–22 contract year. (Id. at p. 13.)

On June 1, 2023, Local 1475 enacted an Addendum to the 2021 MOU ("2023 Addendum"). (Doc. 14-3.) The 2023 Addendum divided Class HH into two Subclasses designated as HH-1 and HH-2. (Id. at p. 3.) The 2023 Addendum defined Subclass HH-1 as:

> All individuals who worked at least 700 hours through the Local 1475 hiring system during both the 2020–21 and 2021–22 Contract Years, and all individuals who were on an [E]mergency [L]ist during the 2020–21 Contract Year and worked at least 700 hours through the Local 1475 hiring system during the 2021–22 Contract Year.

(Id.) Class HH-2 was defined as "[a]ll other individuals who worked at least 700 hours through the Local 1475 hiring system during the 2021–22 Contract Year." (Id.) The 2023 Addendum further provided, "[f]or purposes of hiring preference within the HH classification, all members of Sub-classification HH-1 will be referred to work they are qualified to perform before any jobs are offered to members of Sub-classification HH-2." (Id.) Plaintiff ultimately received HH-1 status. (Doc. 1, p. 11.)

## II.     Procedural History

Plaintiff filed her charge with the EEOC ("Charge") on August 13, 2022,[3] alleging she was treated unfairly and discriminated against.  (Id. at p. 13; see also doc. 14-4, p. 2.)  Plaintiff alleged in her Charge that, in September 2021, Local 1475 made her sign a waiver stating her completed work hours would not count toward advancement to the next seniority level.  (Doc. 14-4, p. 2.)  Plaintiff also claimed that she complained about the waiver to Local 1475, met with them on March 3, 2022, and, soon after, "a new policy was implemented to place [Plaintiff] and others denied advancement into a less desirable category as well as extending the hour requirement needed for advancement."  (Id.)  On December 2, 2022, Local 1475 filed its "Position Statement" with the EEOC in response to Plaintiff's Charge.  (Doc. 1, p. 13.)  On January 30, 2023, Plaintiff filed a counter-response in opposition to Defendant's Position Statement.  (Id.)

On July 1, 2023, Plaintiff filed an amendment to her pending Charge to account for the intervening 2023 Addendum and her receipt of HH-1 status instead of AA status.  (Id. at pp. 13–14.)  On September 1, 2023, she again amended her Charge, seeking to join the twenty-one other African American bargaining unit members assigned HH seniority status.  (Id. at p. 14.)  On September 29, 2023, the EEOC concluded its investigation and dismissed Plaintiff's Charge.  (Id.)

Thereafter, on December 28, 2023, Plaintiff sued Local 1475.  (Doc. 1.)  In the Complaint, Plaintiff brings one claim of racial discrimination under Title VII, alleging that Local 1475 engaged in racially discriminatory employment practices through its enforcement of the 2021

---

[3] The Court's prior Order stated that Plaintiff filed her Charge on September 1, 2022.  (Doc. 24, p. 5.)  The Court noted that the Complaint alleged that Plaintiff timely filed the Charge on September 1, 2022, (id. at p. 5 n.4 (citing doc. 1, p. 13)), but that the Charge itself contains Plaintiff's digital signature with the date August 13, 2022, (id. (citing doc. 14-4, p. 2)).  In Plaintiff's Motion, she makes clear that she in fact filed her Charge on August 13, 2022, and that the September 1, 2022, filing was an amendment.  (Doc. 26, p. 4.)  Though the Court has updated the procedural history to reflect this, the difference does not alter the outcome.

MOU and the 2023 Addendum. (See generally id.) Local 1475 moved to dismiss, arguing that the Court should dismiss this action because Plaintiff: (1) failed to exhaust her administrative remedies under Title VII; and (2) failed to plead facts sufficient to support a claim of racial discrimination. (Doc. 12.) The Court agreed and granted Local 1475's Motion to Dismiss for those reasons. (Doc. 24.)

On September 19, 2024, Plaintiff filed this Motion for Reconsideration, seeking relief from the Court's Order of dismissal. (Doc. 26.) Plaintiff argues reconsideration is warranted because there has been an intervening change in the law and reconsideration is necessary to correct a clear error of law or prevent manifest injustice. (Id. at p. 8.) Defendant filed a Response. (Doc. 27.)

## STANDARD OF REVIEW

The decision to grant a motion for reconsideration is committed to the sound discretion of the district court. Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1216 (11th Cir. 2000). Motions for reconsideration are to be filed only when "absolutely necessary" where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact. Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258–59 (N.D. Ga. 2003); Greene v. Bd. of Regents of Univ. Sys. of Ga., No. 4:21-CV-277, 2023 WL 5837501, at *29 (S.D. Ga. Sept. 8, 2023). "An error is not 'clear and obvious' if the legal issues are 'at least arguable.'" United States v. Battle, 272 F. Supp. 2d 1354, 1358 (N.D. Ga. 2003) (quoting Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1239 (11th Cir. 1985)). Motions for reconsideration are not appropriate to present the Court with arguments already heard and dismissed, to repackage familiar arguments, or to show the Court how it "could have done it better" the first time. Pres. Endangered Areas of Cobb's Hist., Inc. v. United States Army Corps of Eng'rs., 916 F. Supp. 1557, 1560 (N.D.

Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996); Pottayil v. Thyssenkrupp Elevator Corp., 574 F. Supp. 3d 1282, 1301 (N.D. Ga. 2021).

Here, Plaintiff brought her Motion under Federal Rules of Civil Procedure 59(e) and 60(b). (Doc. 26.) Under Rule 59(e), "[t]he only grounds for granting a [plaintiff's] motion are newly-discovered evidence or manifest errors of law or fact." Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1344 (11th Cir. 2010) (quoting Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007)). Rule 60(b), on the other hand, enumerates circumstances in which a party may seek relief from a final judgment, order, or proceeding. The grounds for such relief are:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud . . . , misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1–6). Regardless of which rule applies, motions for reconsideration cannot be used to relitigate issues that a court has already addressed. Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009).

## DISCUSSION

### I. Failure to Exhaust Administrative Remedies

In its prior Order, the Court found that "[b]ecause the discrete acts challenged in her EEOC Charge occurred over 180 days before she filed the Charge, Plaintiff failed to timely file a charge with the EEOC and thus dismissal is proper for failure to exhaust her administrative remedies."

(Doc. 24, p. 11.) Plaintiff's initial Charge was based on the 2021 MOU, which was executed on October 1, 2021, and Plaintiff filed that Charge more than 180 days later—be it on August 13, 2022, or September 1, 2022. (Doc. 14-2; doc. 14-4, p. 2.) Plaintiff now argues her initial Charge was not untimely because, "even though[] the MOU and Gunby's text preceded the date [Plaintiff] was actually aggrieved, [] March 8, 2022 is the date upon which [Plaintiff's] claim primarily rest[s] (the actual date Local 1475 discriminated against Plaintiff when failing to promote her to the AA seniority class she was entitled)." (Doc. 26, p. 11.)

As an initial matter, Plaintiff already made this argument, making it improper for a motion for reconsideration. (See doc. 15, p. 9 ("the MOU did not become fully ripe, materialize, or accrue until Local 1475 fell through with its intended plan to . . . award Gunby and a group of predominantly white members (on March 8, 2022) with AA seniority").) On this basis alone, her Motion could be denied. See Wilchombe, 555 F.3d at 957. Furthermore, the argument is directly at odds with Plaintiff's prior concession that "the MOU took effect on 10/01/2021." (Doc. 15, p. 9.) The Court's prior Order was perfectly clear:

> Bazemore's primary complaint here is that she was made to sign a waiver of seniority rights and that, to gain any seniority rights, she was made to meet an additional 700-hour requirement in the 2021–22 contract year under the 2021 MOU. The Waiver and the 2021 MOU were effectuated in September 2021 and October 2021 respectively—around a year before Bazemore filed her Charge. While Bazemore may not have actually received Class HH status until the completion of the 2021–22 contract year, she was aware of the terms well before then (as evidenced through her complaint and meeting with Local 1475 leadership), and she has not alleged that the Waiver or the 2021 MOU are not being applied in accordance with their terms (much less that they are being applied in a disparate fashion). Whether she is challenging when the waiver was signed or when she achieved HH status is a moot point; her challenge here is to the actual terms of the 2021 MOU, which went into effect in October 2021. Because the discrete acts challenged in her EEOC Charge occurred over 180 days before she filed the Charge, Plaintiff failed to timely file a charge with the EEOC and thus dismissal is proper for failure to exhaust her administrative remedies.

(Doc. 24, pp. 10–11.) These observations are still true, and Plaintiff has pointed to no new evidence, intervening law, or clear error of fact to show otherwise. (See doc. 26, pp. 10–11.) Plaintiff merely seeks to relitigate this matter by repackaging arguments she has already made. Thus, her Motion for Reconsideration cannot be granted on this ground.

## II.     Failure to Plead a Claim of Racial Discrimination

Plaintiff's failure to exhaust her administrative remedies as required by Title VII was not the sole reason for the dismissal. In its prior Order, the Court found that "even if . . . [Plaintiff] had fully exhausted her administrative remedies on all her challenged actions, she has still failed to allege facts sufficient to support her claim of racial discrimination under Title VII." (Doc. 24, p. 11.) Plaintiff argues reconsideration on this issue is required by an intervening change in the law and to correct a clear error of law. (Doc. 26, pp. 8, 12–20.)

Plaintiff identifies the supposed intervening law requiring reconsideration here as Tynes v. Florida Dep't of Juvenile Justice, 88 F.4th 939, 939 (11th Cir. 2023), cert. denied, 145 S. Ct. 154 (2024). In Tynes, the Eleventh Circuit Court of Appeals stated that a plaintiff who cannot satisfy the McDonnell Douglas framework may nonetheless prove her employment discrimination claim with a convincing mosaic of circumstantial evidence that would allow the jury to infer intentional discrimination by the decisionmaker. Id. at 946. However, Tynes is not an intervening change in law. First, the Opinion predates the Order of dismissal that Plaintiff now contests. (Compare id. at 939, with doc. 24.) But more importantly, the "convincing mosaic" standard has been law in the Eleventh Circuit for quite some time. See, e.g., Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) ("A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow

9

a jury to infer intentional discrimination by the decisionmaker.") (citation modified).  Accordingly, Tynes is not intervening law that warrants reconsideration of the Court's prior Order.

Even so, Plaintiff has not alleged a convincing mosaic of circumstantial evidence that supports an inference of discrimination.  The Court was clear in its Order of dismissal: "[t]he sole evidence [Plaintiff] offers to support her claim of racial discrimination is her personal interpretation of Gunby's text message . . . . [Plaintiff] has failed to allege anything, beyond mere speculation, indicating that Gunby's text related to race."  (Doc. 24, pp. 13–14.)  This falls well short of a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.  Such conclusion is only reinforced by the fact that the Court has no reason to attribute Gunby's conduct to Defendant, as Plaintiff continues to claim only that "Gunby may or may not have been acting on behalf of the union."  (Doc. 26, p. 17.)

Plaintiff does not otherwise identify any clear error of law to warrant reconsideration.  (See id. at pp. 12–20.)  Again, Plaintiff only seeks to relitigate issues which have already been found lacking.  See Wilchombe, 555 F.3d at 957.  A motion for reconsideration cannot be granted in such instances, and thus, the Court **DENIES** Plaintiff's Motion.  (Doc. 26.)

## CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Reconsideration, (doc. 26), of the Court's August 22, 2024, Order, (doc. 24). There were multiple, independent reasons to dismiss Plaintiff's claims, and Plaintiff has not identified any newly discovered evidence, intervening development in controlling law, or clear error of law or fact to warrant reconsideration. The Court's previous decision, (id.), remains the Order of the Court.

**SO ORDERED**, this 14th day of July, 2025.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA